UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JESUS CARMONA,

Plaintiff,

v.

DICK ROSS,

Defendant.

Civil No. 00-2447 (MJD/ESS)

**REPORT AND RECOMMENDATION**

THIS MATTER is before the undersigned United States Magistrate Judge on Defendant Dick Ross' Motion for Summary Judgment [Docket No. 34]. This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and these proceedings have been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons stated below, the Court recommends that Defendant's motion be granted.

## I. BACKGROUND

On April 24, 1984, a jury in Louisiana found the Plaintiff, Jesus Carmona, guilty of two counts of armed robbery; he was sentenced to a term of imprisonment of 25 years. [Docket No. 36, Ex. A].[1] On June 14, 1996, Carmona was paroled; among the conditions of his parole, Carmona was required to remain in the State of Louisiana and he waived his right to contest extradition to Louisiana. [Docket No. 36, Exs. B and C].[2] Carmona subsequently left Louisiana and, on January

[1]Carmona contests the fact that he was found guilty. He claims that the jury was unsworn, they gave an unresponsive verdict, and their "illegal" judgment was "null and void." [Docket No. 37, Page 11].

[2]Carmona contests the facts that he was "paroled." [Docket No. 37, Page 11]. Carmona was released pursuant to a diminution of sentence pursuant to Louisiana Revised Statutes, Title 15, Section 571.5. [Docket No. 3, Ex. C]. This statute says that "when a prisoner ... is released because of diminution of sentence pursuant to this Part, he shall be released as if released on parole." La. R.S. 15:571.5.

MAY 0 8 2002
FILED ______
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ______
DEPUTY CLERK ______

5, 2000, Louisiana's Department of Public Safety and Corrections, Board of Parole, issued an arrest warrant for Carmona because he violated parole. [Docket No. 36, Ex. B].[3] On May 21, 2000, Carmona was arrested in Crow Wing County, Minnesota. He was detained in the Brainerd City Jail by Defendant, Dick Ross, the Sheriff for Crow Wing County. On July 21, 2000, Minnesota Governor Jesse Ventura signed a warrant authorizing the extradition of Carmona to Louisiana. [Docket No. 36, Ex. E]. Plaintiff filed a habeas corpus petition in state court. The petition was denied by Minnesota District Court Judge David J. Ten Eyck; on January 30, 2001, the denial of the petition was affirmed by the Minnesota Court of Appeals. [Docket No. 36, Exs. J and K]. On February 5, 2001, Plaintiff was extradited and is currently incarcerated at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana [Docket Nos. 11 and 14]. Carmona appealed the decision of the Court of Appeals; on March 13, 2001, the Supreme Court of Minnesota declined to review the decision of the Court of Appeals.

In the present case, Carmona claims that Defendant Ross and his deputies, (identified as John Doe defendants), have violated his constitutional right of access to the courts. He alleges that Defendants have denied his repeated requests for "law books and legal cases," refused to make copies of his "legal materials and petitions for court," and barred him from using a computer. [Docket No. 1]. It is further alleged that "[b]ecause of his denial of access to legal materials and a law library to research and prepare, Carmona has suffered undue delay and hardship in his legal proceedings." Id. In his Amended Complaint, Carmona added numerous allegations regarding his arrest and detention. [Docket No. 9]. With very little specificity with respect to each individual claim, Carmona alleges violations of his First, Fourth, Fifth, Eighth and Fourteenth Amendment

[3]Carmona maintains that the arrest warrant is a phony document. [Docket No. 37, Page 6].

rights under the United States Constitution. Id. Carmona also argues that the Defendants violated his constitutional rights by extraditing him to Louisiana on February 5, 2001.[4] However, these allegations do not appear in his Amended Complaint and Carmona has never sought to amend it.[5]

Ross is the only Defendant who has been served. [Docket No. 16]. Ross has moved to dismiss all of Carmona's claims. He presents several arguments in favor of his motion, including subject matter jurisdiction, failure to state a claim, and summary judgment. [Docket No. 35].

Carmona opposes the motion and submitted a memorandum in opposition to it. [Docket No. 37]. He has also submitted exhibits in support of his motion; however, the exhibits have not been sworn to, as provided for in Fed. R. Civ. P. 56(e). [Docket No. 38]. Some of his exhibits are duplicates of exhibits submitted by Ross [Docket No. 38, Exs. E, F, and G]; Carmona has submitted Louisiana statutes and court decisions and other documents [Docket No. 38, Exs. A, B, H, and I]; he has also submitted correspondence that, in the Court's review of the filings in this case, does not appear elsewhere in the record. [Docket No. 38, Exs. C and D].[6]

---

[4]The Court observes that Carmona does not provide evidence that Ross, the only Defendant who has been served, had any part in extraditing him. Carmona says that Don Edwards and Pete "Doe" confiscated his legal materials on February 5, 2001. [Docket No. 37, Page 2]. He also alleges that Ross conspired with Inward and "Doe" to extradite him, but the evidence offered in support of his position makes no mention of Ross. [Docket Nos. 37, Page 2, and 38, Ex. C].

[5]In fact, of the 20 "undisputed facts" identified by Carmona, 11 of them (3-9, 12, 13, 19, 20) involve facts occurring after Carmona filed his Amended Complaint. [See Docket 37].

[6]The Court has not excluded these exhibits for several reasons, though some of them should have been. The documents that duplicate Ross' Exhibits have been authenticated by Ross' attorney [Docket No. 36]. The statutes and court opinions, while largely irrelevant to this case, are the sorts of documents regularly relied upon by the Court. The correspondence should be excluded; however, because they concern factual allegations that are irrelevant to those contained in the Amended Complaint, their consideration is harmless.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Ross argues that the Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine. "Lack of subject matter jurisdiction, unlike many other objections to the jurisdiction of a particular court, cannot be waived. It may be raised at any time by a party to an action, or by the court sua sponte." Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993); see also Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

"The Rooker-Feldman doctrine recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000)(citations omitted). Instead, federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court. Id.; see also §28 U.S.C. 1257. "The Rooker-Feldman doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions. Thus, a corollary to the basic rule against reviewing judgments prohibits federal district courts from exercising jurisdiction over general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court." Id., at 492-93 (citations omitted). "A general federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'" Id., at 493 (citations omitted). "In such cases, 'where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceedings as, in substance, anything other than a prohibited appeal of the state-court judgment.'" Id., at 493 (citations omitted). "Deciding whether Rooker-Feldman controls this

case 'requires determining exactly what the state court held' to ascertain whether granting the requested federal relief would either void the state court's judgment or effectively amount to a reversal of its holding.'" Id., at 493 (citations omitted).

Carmona asserts that Ross forfeited his right to raise the Rooker-Feldman doctrine by "unlawfully and without judicial permission [extraditing] Plaintiff to Louisiana." [Docket No. 37, Page 13]. Carmona offers no authority for his assertion that the Rooker-Feldman doctrine can be forfeited. The Court rejects this argument. As explained above, Rooker-Feldman is a jurisdictional doctrine and subject matter jurisdiction cannot be waived.

Many of the claims raised in Carmona's complaint have been addressed by the Minnesota Court of Appeals. Carmona alleges that his court-appointed attorney failed to object to the district attorney's request that Carmona not be released on bail; the denial of bail or bond violated his Eighth Amendment rights. [Docket No. 9]. The Minnesota Court of Appeals found Carmona's allegation of ineffective assistance of counsel to be without merit. [Docket No. 36, Ex. K]. He then asserts that his arrest for a misdemeanor on a Sunday violated state and federal law. [Docket No. 9]. The Court of Appeals found this argument to be without merit, as well. [Docket No. 36, Ex. K]. Carmona also complained that his detention for a period exceeding 30 days violated Minnesota Statutes § 629.15. [Docket No. 9]. The Court of Appeals analyzed Carmona's claim and determined that he had not been detained unlawfully. [Docket No. 36, Ex. K]. Carmona asserts that he was forced to attend his extradition hearing without counsel to assist him. [Docket No. 9]. The Court of Appeals reviewed the record and concluded that Carmona decided to proceed *pro se* because he was not happy with the assistance of the public defender. [Docket No. 36, Ex. K]. Thus, the Court of Appeals determined that Carmona had knowingly and voluntarily waived his right to counsel. Id.

With respect to these claims, the Rooker-Feldman doctrine deprives the court of jurisdiction. The Minnesota Court of Appeals considered these claims and determined that they were without merit with respect to Carmona's claim that he was being unlawfully detained. If this Court were to conclude that these allegations provide the basis for a § 1983 claim, the Court would imply that the Minnesota Court of Appeals decided these issues incorrectly. Because this is exactly what the Rooker-Feldman doctrine seeks to prevent, the Court concludes that it lacks subject matter jurisdiction over these matters. Accordingly, the Court recommends that these claims be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

B. Failure to State a Claim

Relying on Johnson v. State of Neb., Dept. of Corr. Serv., 806 F.Supp. 1412 (D.Neb. 1992), Ross argues that any remaining matters in Carmona's pleadings should be dismissed for failure to state a claim upon which relief can be granted. [Docket No. 35]. Johnson involved a *sua sponte* dismissal by the Court upon an initial review of an inmate's claims. This Court has already recommended such a dismissal for many of the same reasons discussed in Johnson. [Docket No. 7]. Carmona objected to the recommendation and filed an Amended Complaint. [Docket Nos. 8 and 9]. In reviewing the objections and the Amended Complaint, District Court Judge Michael J. Davis concluded that the Amended Complaint sufficiently alleged a claim upon which relief could be granted and declined to dismiss Carmona's Amended Complaint. [Docket No. 13]. Considering the history of this case, Ross' reliance on Johnson is unpersuasive.

Furthermore, the Court observes that, when matters outside the pleadings have been presented to and not excluded by the Court, a motion to dismiss for failure to state a claim should be treated as one for summary judgment. See Fed.R.Civ.P. 12(b). Considering the number of documents contained in the file, Carmona's remaining complaints are best addressed pursuant to

the standard for summary judgment.

C. Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the case may be decided on purely legal grounds. Fed. R. Civ. P. 56(c); Agristor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). To be considered material, any disputed facts must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586, n. 11; see also Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995); Fed. R. Civ. P. 56(e).

When there can be no reasonable construction of the facts that would allow the non-moving party to prevail, the remedy of summary judgment is appropriate. Matsushita, 475 U.S. at 586-87. Summary judgment is not appropriate, however, where there are genuine factual issues that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250.

Guided by these standards, the court will now proceed to determine whether Defendants are

entitled judgment under the applicable law, which, in this case, is found in section 1983 of title 42 of the United states Code and the cases decided thereunder.

The central allegation in Carmona's Amended Complaint is that he was denied access to the law library and legal materials. [Docket Nos. 1 and 9]. He alleges that he suffered "physical and mental injuries because of the denial to access."

The Supreme Court has held that a prisoner's right to access to the courts requires prison authorities to assist inmates in the preparation and filing of legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. Lewis v. Casey, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177 (1996)(citing Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). Casey explained that an inmate must demonstrate "actual injury" in order to prevail on a Bounds claim. Id., at 349-355, 2179-82. Applying Casey, the Eighth Circuit explained that inmates must show, for example, "that a complaint they prepared was dismissed due to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a complaint for actionable harm at all." Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996).

Carmona alleged that he suffered physical and mental injuries, false imprisonment, false arrest without an arrest warrant, and imprisonment without violating a criminal law. [Docket No. 9, Page 9]. Thus, his Amended Complaint sufficiently alleged an actual injury. However, in response to Ross' summary judgment motion, Carmona has failed to produce evidence of an actual injury. Instead, Carmona argues that his "actual injuries are self-evident." [Docket No. 37, Page 14]. He maintains that Ross' failure to provide him with access to legal books and materials caused him to be held in prison longer than he would have been if he had been provided with the minimum legal requirements. The Eighth Circuit has said that a vague allegation that, but for the denial of access,

a prisoner would be set free does not create a genuine issue of material fact. Cody v. Weber, 256 F.3d 764, 770 (8th Cir. 2001).[7] In addition, Carmona's false arrest and imprisonment occurred prior to any alleged denial of access; consequently, even if they do constitute an "actual injury," they were not caused by a violation of Carmona's right of access to the court system.

The record suggests that Carmona has had ample access to the court system. Apart from the instant case, Plaintiff filed a habeas corpus petition in this district, (Carmona v. Ross, Civil No. 00-1450 (MJD/ESS)). [Docket No. 14]. As mentioned above, he also filed a habeas corpus action in state court; he appealed the decision of the Minnesota District Court to the Minnesota Court of Appeals; ultimately, the Minnesota Supreme Court declined to review the decision of the Court of Appeals. The record clearly demonstrates that Carmona was not "so stymied by inadequacies of the law library that he was unable even to file a complaint." Casey, 518 U.S. at 351, 116 S.Ct. at 2180.

Delving further into the record, Ross has submitted the Inmate Request Forms that Carmona completed while he was in jail. [Docket No. 36, Ex. I]. However, the Court does not think that Ross has submitted all of Carmona's requests. Ross submitted a total of 27 request forms dated between June 16, 2000 and January 10, 2001. However, on December 25, 2000, Carmona completed an Inmate Request Form that requested copies of all of his requests between November 1, 2000 and December 25, 2000, especially one that was submitted on December 22, 2000; Carmona also

---

[7]The specific allegation in Cody concerned data the inmate had saved on his computer. The inmate was the only prisoner who had a computer at the time. Prison officials decided that he could not keep his computer and gave him two weeks to print data from it. The computer was taken before the inmate printed out all of the data. The Eighth Circuit said that an allegation that the stored would set him free did not raise a genuine issue of material fact. Should the District Court consider Carmona's allegations that Ross stole his legal materials when Carmona was extradited, an event that occurred after the filing of the Amended Complaint, Cody provides a relevant rule of law. However, because this matter has not been pled and because the evidence does not implicate Ross, the Court does not think that the allegations relating to Carmona's extradition are properly before it.

requested copies of all of the grievances he submitted. Id. On December 28, 2001, without specifying the number of requests compared to grievances, prison officials gave him 18 copies. Id. For the relevant time period, the Court has only 5 Inmate Request Forms and, specifically, the Court does not have a request form dated December 22, 2000. While this apparent gap in the record is curious, Carmona has not described the kind of relevant information that is contained in these "missing" Inmate Request Forms. [See Docket Nos. 31, Page 2, and 37, Page 11]. Thus, the Court can infer little from their absence.

However, considering the Inmate Request Forms that were submitted, the Court finds little evidence to support Carmona's allegations of actual injury. On June 17, 2000, Carmona expressed a desire to purchase a copy of the Louisiana Code of Criminal Procedure; he was given help in obtaining a copy. Id. The absence of Louisiana legal materials in a Minnesota prison library would not violate Carmona's constitutional right of access to the courts. Compare Casey, 518 U.S. at 355, 116 S.Ct. at 2182 ("'This Court does not feel inmates need the entire U.S.Code Annotated. Most of that code deals with federal laws and regulations that would never involve a state prisoner.'")(quoting Bounds, supra). On July 5, 2000, Carmona complained that he had been informed that his legal mail had not been sent out; prison officials responded that it had. [Docket No. 36, Ex. I]. On July 10, Carmona was given access to a computer to prepare his state court appeal. Id. On July 17, 2000, Carmona's need for a notary for his appeal was taken care of. Id. On July 23, 2000, Carmona requested four copies of his legal documents; he was informed that copies cost $4.00 for the first *page* and 25¢ for each additional *page*. Id. On July 24, 2000, Carmona again requested copies for his appeal and accused the prison officials of obstructing his access to the courts; he was informed that it would cost $4.00 for the first *copy* and 25¢ for each additional *copy*. Id. On July 24, 2000, Carmona requested that "disciplinary charges [be] brought against the jailers

that refused to make copies of [his] legal papers." Id. He added that the prison officials should charge the cost of the copies to the courts. Id. The prison officials responded by telling him that they would make copies for him if he gave them the money. Id. While the record is unclear as to the exact resolution of the dispute about the copies Carmona needed for his appeal, the record clearly indicates that the Minnesota Court of Appeals considered his appeal. [Docket No. 36, Ex. K]. Consequently, the Court finds no evidence that this dispute caused injury to Carmona.

With respect to Carmona's claim that he was denied access to the court system, the evidence submitted by Ross establish that there are no genuine issues of material fact. Carmona has not come forward with any evidence to rebut the claim. Consequently, the Court recommends that this part of his claim be dismissed. See Cooper v. Delo, 997 F.2d 376 (8th Cir. 1993).

Apart from the denial of access claim, Carmona complains about his arrest. His exact complaint about his arrest is unclear. He complained that he was arrested without a warrant. [Docket No. 8, Page 5]. He complained that he was arrested without a *lawful* warrant; he later described it as an unconstitutional arrest warrant. [Docket No. 9, Pages 3 and 10]. In response to Ross' summary judgment motion, he complains that he was "unlawfully kidnapped under the barrel of a loaded gun." [Docket No. 37, Page 4]. However it is characterized, a false arrest can give rise to a cause of action under 42 U.S.C. § 1983. See Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689 (1979).

The Court is convinced that Ross is entitled to summary judgment with respect to these allegations as well. Relying primarily on Louisiana law, Carmona attacks the arrest warrant of Louisiana's Department of Public Safety and Corrections as a phony document. [Docket No. 37, Page 6]. Carmona also maintains that his conviction in 1984 and his parole, or "diminution of sentence," in 1996 were improper. [Docket No. 37, Page 11]. None of this is relevant because the evidence establishes that Ross was not involved in Carmona's arrest. The Notice of Execution of

Arrest Warrant[8] states that the arresting officer was Harry Sotted (sp?). Carmona alleges that he was kidnapped by Officer Tim Friis. [See Docket Nos. 36, Ex. A, and 37, Page 4]. Whatever the legality of Carmona's arrest, Carmona has failed to rebut the evidence that shows that someone other than Ross arrested him. In fact, Carmona himself states that someone other than Ross arrested him. There is no genuine issue of material fact as to whether Ross arrested Carmona; consequently, he is not liable for any illegality of the arrest. Accordingly, the Court recommends that summary judgment be granted on this aspect of Carmona's claim.

D. Conclusion

In his Amended Complaint, Carmona makes numerous allegations against several Defendants. However, to date, only Ross has been served. After he filed the Amended Complaint, Carmona was extradited to Louisiana. Subsequently, many of Carmona's filings, even his Notice of Change of Address, have referred to his "illegal extradition." [Docket No. 11]. However, Carmona did not amend his complaint to add a cause of action for these actions. Consequently, in considering Ross' motion, the Court has ignored allegations against the Ross' Co-Defendants and has ignored allegations related to matters not contained in the Amended Complaint. Of the remaining allegations, the Court concludes that the Rooker-Feldman doctrine deprives the Court of jurisdiction over many of them. However, the Court concludes that it has the jurisdiction to consider Carmona's claims for false arrest and denial of access to the courts. The Court recommends that the motion for summary judgment be granted with respect to the false arrest claim because the evidence establishes that Ross did not arrest Carmona. The Court recommends that the motion for summary judgment be granted with respect to the denial of access claim because Ross submitted evidence that

---

[8]Carmona correctly points out that this document was incorrectly identified as an arrest warrant. [See Docket Nos. 36, Ex. D, and 37, Page 10].

suggests that Carmona did have access to adequate legal materials and Carmona has failed to provide specific evidence to support his claim that his access to legal materials was denied by anyone, including Ross. Accordingly, the Court recommends that Ross' motion be granted.

## III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED:**

1. That Defendant's Motion for Summary Judgment be GRANTED [Docket No. 34].

Dated: May 8, 2002

E. S. SWEARINGEN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.