UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jesus Carmona,

Plaintiff,

vs.

John Sausen, David Ten Eyck, David Hermerding, Jennifer Cummings, Tim Friis, Jesse Ventura, Mike Hatch, Don Inwards, Marshall Prescott, Rod McCulley, Dick Ross, Harvey (Doe) and Pete (Doe),

Defendants.

Case No. 00-2447 MJD/RLE

**DEFENDANTS JOHN SAUSEN, DON INWARDS, MARSHALL PRESCOTT, ROD McCULLEY, DICK ROSS, HARVEY DOE AND PETE DOE'S MEMORANDUM OF LAW IN SUPPORT OF INDIVIDUAL AND JOINT MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

This case arises from the arrest and extradition of pro se plaintiff Jesus Carmona (Carmona). In June 1996, Mr. Carmona was released on parole after serving 12 years of his 25-year conviction in Louisiana for armed robbery. Mr. Carmona violated his parole by leaving Louisiana and a warrant for his arrest was issued. In May 2000, Mr. Carmona was arrested pursuant to the warrant and held at Crow Wing County Jail until he was extradited. Mr. Carmona claims Defendants violated his constitutional rights under the First, Fourth, Eighth and Fourteenth Amendments when he was arrested and extradited.

Defendants bring this Motion for Summary Judgment[1] on the grounds Mr. Carmona has failed to state a claim upon which relief can be granted; Mr. Carmona's

[1] Co-defendants previously filed a motion for summary judgment on June 10, 2005 and those arguments and facts are adopted herein.

parole revocation and prior litigation precludes him from relitigating his arrest; in the alternative, Mr. Carmona has failed to assert a proper conspiracy or access to courts claim; and to the extent Mr. Carmona has a valid claim, Defendants are entitled to qualified and official immunity. Accordingly, Defendants request the Court grant its Motion for Summary Judgment and dismiss Mr. Carmona's action with prejudice.

## STATEMENT OF FACTS

On April 24, 1984, a jury in Louisiana found Mr. Carmona guilty on two counts of armed robbery. *Aff. Kafi E. Cohn (Docket #36) ¶ 2 (April 2, 2002).* Mr. Carmona was sentenced to twenty-five years in prison but after serving twelve years was released on parole. *Id. at ¶¶ 2-3.* One of the conditions of parole was that he remain within the limits of the Jefferson District in the State of Louisiana. *Id. at ¶ 4.* In January 2000, the State of Louisiana, Department of Public Safety and Corrections Board of Parole, issued an arrest warrant for Mr. Carmona for violating his parole by leaving the State of Louisiana. *Id. at ¶ 2.*

On May 21, 2000, at approximately 10:18 p.m., Mr. Carmona was arrested in Brainerd, Minnesota, and held at the Crow Wing County Jail, pursuant to the valid arrest warrant. *Id. at ¶ 5.* When Mr. Carmona was booked into Crow Wing County Jail, he received an inmate handbook, which explained the rules and procedures of the jail as well as the proper course of action for acquiring materials from the jail's law library. *Id. at ¶¶ 8-9.* During his incarceration at Crow Wing County Jail, Mr. Carmona submitted over 25 request forms for legal materials. *Id. at ¶ 10.* When each request was fulfilled, the jail programmer would initial the request form. *Id.* If the request was not filled, the jail

staff would document an explanation. *Id.* While incarcerated at the Crow Wing County Jail, Mr. Carmona received no physical injuries or discipline. In fact, there were no problems concerning Mr. Carmona until he was ordered to be extradited to Louisiana.

Mr. Carmona appeared in criminal court on May 23, 2000, where he was denied bail. *Pl.'s 2nd Amend. Compl. (Docket #40) §II ¶ 4-5 (May 6, 2002).* On May 21, 2000, Governor Ventura issued a rendition warrant directing Carmona be extradited to Louisiana. *Aff. Cohn (Docket #36) at ¶ 6.* Mr. Carmona then filed a writ of habeas corpus. *Pl. 2nd Amend. Compl. (Docket #40) § II ¶ 5.* On August 15, 2000, Judge Ten Eyck denied Mr. Carmona's writ of habeas corpus and ordered Mr. Carmona be delivered to the custody of Louisiana. *Aff. Cohn (Docket #36) ¶ 11.* Mr. Carmona appealed, and the Minnesota Court of Appeals affirmed the denial. Subsequently, the Minnesota Supreme Court denied review. *Aff. Cohn (Docket #36) ¶ 12, State v. Carmona*, 2001 WL 69505 (Minn. App. Jan 30, 2001) (rev. denied Mar. 13, 2001). Mr. Carmona was extradited February 5, 2001. He is currently incarcerated in Louisiana as evidenced by his current pleadings.

Mr. Carmona initially filed this civil rights action against Crow Wing County Sheriff Dick Ross and other Crow Wing County employees on October 3, 2001, alleging violations of his First, Fourth, Eighth and Fourteenth Amendment Rights as a result of his arrest and incarceration in the Crow Wing County Jail. *Pl.'s Compl. (Docket #1) Nov. 3, 2000.* Only Sheriff Ross was properly served. Sheriff Ross filed for summary judgment on April 3, 2002. *Defendant Ross' Motion for Summary Judgment (Docket #34) Apr. 3, 2002.* The Honorable E.S. Swearingen, United States Magistrate Judge for the District of

Minnesota, issued a Report and Recommendation recommending Defendant's Motion for Summary Judgment be granted. *Report and Recommendation (Docket #39) May 8, 2002.*

In the adopted Report and Recommendation Magistrate Judge Swearingen analyzed Mr. Carmona's claims of ineffective assistance of counsel, illegal arrest on Sunday, unlawful detainment and denial of assistance of counsel according to the *Rooker-Feldman* doctrine and concluded:

> With respect to these claims, the *Rooker-Feldman* doctrine deprives the court of jurisdiction. The Minnesota Court of Appeals had considered [Mr. Carmona's] claims and determined that they were without merit with respect to Carmona's claim that he was being unlawfully detained. If [the federal court] were to conclude that these allegations provide the basis for a § 1983 claim, the court would imply that the Minnesota Court of Appeals decided these issues incorrectly.

*Id. page 6.* Magistrate Judge Swearingen determined, "[the federal court]…lacks subject matter jurisdiction over these matters." *Id.*

Regarding the claim of denial of access, Magistrate Judge Swearingen stated, "The record suggests that Carmona has had ample access to the court system…the record clearly demonstrates that Carmona was not 'so stymied by inadequacies of the law library that he was unable even to file a complaint.'" *Id. at page 9* (quoting *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180 (1996)).

Regarding his false arrest claim, Magistrate Judge Swearingen stated, "Carmona has failed to rebut the evidence that shows that someone other than Ross arrested him." *Id. at page 12.* Therefore, while the Court held it lacked subject matter jurisdiction over most of the claims, Defendant Ross was entitled to summary judgment regarding Mr.

Carmona's denial of access to legal materials claim and false arrest claim. *Id. at pages 12-13.*

On June 26, 2002, the Honorable Judge Michael Davis issued an Order adopting the Report and Recommendation and dismissed Mr. Carmona's claims with prejudice. *Order (Docket #46) June 26, 2002.*

Mr. Carmona appealed and the Eighth Circuit initially remanded the matter stating, "the district court failed to address Carmona's claims against multiple unserved defendants, those claims remain pending and this appeal is premature." *Opinion from USCA (Docket #59) June 30, 2003, Carmona v. Ross,* 65 Fed.Appx. 576 (8th Cir. June 2, 2003). On remand Judge Davis dismissed all unserved defendants. *Order (Docket #61) August 14, 2003.* Mr. Carmona again appealed and on July 6, 2004, the Eighth Circuit affirmed the district court's dismissal of defendants City of Brainerd, Crow Wing County, Rod McCulley, Marshall Prescott, Denny Peterson, David Hermerding, and Jennifer Cummings but modified the dismissal to be without prejudice. *Carmona v. Ross*, 376 F.3d 829, 831 (8th Cir. 2004) (Docket #67). In regards to defendants John Sausen, Judge David Ten Eyck, Tim Friis, Jesse Ventura, Mike Hatch, Don Inwards and Pete Doe, the Eighth Circuit held "Carmona should have been given an additional 120 days to serve those defendants who were added by the second amended complaint." Therefore the dismissal was reversed, simply to allow Mr. Carmona time to serve all parties. *Id.*

Mr. Carmona has now served all named parties and seeks declaratory relief and damages for his claimed unlawful extradition from Louisiana to Minnesota as well as

damages for many of the same claims dismissed by the Report and Recommendation adopted by Judge Davis and affirmed by the Eighth Circuit.

## STANDARD OF REVIEW

The standard for summary judgment is well known to this Court. Summary judgment is appropriately granted when there is no dispute between the parties as to any genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c).

## ARGUMENT

### I. MR. CARMONA'S ARREST FOR VIOLATING HIS PAROLE AND PRIOR LITIGATION PRECLUDES HIM FROM RELITIGATING THE CONSTITUTIONALITY OF HIS ARREST.

Defendants' John Sausen, Don Inwards, Marshall Prescott, Rod McCulley, Dick Ross, Harvey Doe and Pete Doe, hereby adopt the co-defendants' arguments regarding the *Rooker-Feldman* Doctrine, Law of the Case Doctrine and Collateral Estoppel described in Defendants' Memorandum in Support of Summary Judgment, dated June 10, 2005. *Memorandum in Support of Motion to Dismiss (Docket #80) pages 4-9 June 10, 2005.* Further, Defendants argue Mr. Carmona's claims should be dismissed based on res judicata and the *Heck v. Humphrey* doctrine.

#### A. Res Judicata

Collateral estoppel provides relief from relitigating the same issues and Res Judicata provides relief from re-litigating entire causes of actions. Prior state court judgments have the same preclusive effect in federal court as those judgments have in Minnesota. 28 U.S.C. § 1738 (2005). Consequently, federal district courts reviewing res

judicata arguments arising out of alleged preclusion of federal claims by prior state court adjudications look to the law of the state in which the state court adjudication occurred. *Sondell v. Northwest Airlines, Inc.*, 56 F.3d 934, 937 (8th Cir. 1995) (citing *Dorso Trailer v. American Body and Trailer*, 482 N.W.2d 771, 773-74 (Minn. 1992)). Minnesota's Res Judicata doctrine provides an absolute bar to a second suit when another judgment on the merits of the same cause of action was entered. *Id.* The decision of the previously adjudicated lawsuit is conclusive between parties and privies, not only to those matters already litigated but also to every matter, which Plaintiffs could have litigated. *Id.*

In the present action, Mr. Carmona challenged his arrest and extradition by filing a writ of habeas corpus. A Judge heard arguments and denied the writ. Mr. Carmona appealed the decision to the Minnesota Court of Appeals which affirmed the denial of the writ. Subsequently, the Minnesota Supreme Court denied review. Obviously, this lawsuit represents Mr. Carmona's attempt to continue litigating the same state court case. Res judicata applies and Mr. Carmona's claims should be dismissed with prejudice.

**B. *Heck v. Humphrey***

Any 42 U.S.C. § 1983 claims which may have been brought by Mr. Carmona are precluded by the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994). In *Heck*, the Supreme Court unanimously held to recover damages for an unconstitutional conviction or sentence, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on appeal, expunged by executive order, [or] declared invalid by a state court or in a federal habeas corpus proceeding." 512 U.S. at 477. Until the conviction or sentence has been overturned, the claim is not cognizable under § 1983.

Justice Scalia reasoned because "§1983 creates a species of tort liability," it makes sense to look to the "closest" common-law analogy to § 1983 claims attacking convictions or sentences, the tort of malicious prosecution. One of the elements of a common law malicious prosecution claim is the criminal prosecution terminated in favor of the accused. This requirement avoids collateral attacks upon convictions through civil actions. The Court held this "hoary principle . . . applies to § 1983 damages actions necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." Therefore, like the common-law tort of malicious prosecution, a § 1983 attack upon the validity of a conviction or sentence does not lie until the conviction or sentence has been overturned, either judicially or by executive order. Until that time, the claim "is not cognizable under § 1983." 512 U.S. at 477. The Court stressed its' ruling pertains only to those § 1983 claims that "necessarily" implicate the validity of the conviction or sentence. *Id.* at 485.

Significantly, Justice Scalia presented a hypothetical to illustrate this point. He explained a state defendant convicted of resisting arrest, commonly defined as "intentionally preventing a peace officer from effecting a lawful arrest," could not assert a § 1983 claim "against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures," until the conviction is overturned because, to prevail on the § 1983 claim, "he would have to negate an element of the offense of which he has been convicted." In this instance, "[r]egardless of the state law concerning res judicata, . . . the § 1983 action will not lie." Id. at 2372 n. 6 & 7.

In *Yeazizw v. City of Edina*, 2003 WL 1966285 (D. Minn. Apr 28, 2003), the Court found plaintiff's claims were precluded since her claimed constitutional injuries all go to the validity of the state court conviction. *Id.* The plaintiff in *Yeazizw* argued *Heck* cannot apply because everything in the state conviction process was tainted by Defendants' fabrications. *Id.* The district court found plaintiff had an opportunity to challenge defendants' actions in the state court trial and refused to allow plaintiff's 1983 claims. *Id.*

In the present case, Mr. Carmona was arrested on a valid arrest warrant issued from the Department of Corrections in Louisiana. *Aff. Cohn (Docket # 36) ¶ 5.* Mr. Carmona was extradited, via a valid extradition order, to Louisiana where his parole was revoked for violating the condition he not leave Jefferson District. *Id.* at ¶ 6. In order for Mr. Carmona's § 1983 claims to survive summary judgment he must prove his parole was not revoked, thereby invalidating his arrest warrant for violating his parole. Mr. Carmona has not and cannot do this. Therefore, *Heck* precludes Mr. Carmona's claims he was unlawfully arrested, detained and extradited.

## II. MR. CARMONA HAS FAILED TO STATE A CLAIM FOR CONSPIRACY.

Throughout his Complaint, Mr. Carmona continually claims Defendants conspired against him in order to circumvent his rights. Mr. Carmona never explicitly claims this conspiracy violates 42 U.S.C. § 1985 however, Defendants interpret Mr. Carmona's conspiracy claims to fall under this statute.

According to 42 U.S.C. § 1985, Mr. Carmona must prove, "(1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive [him] directly or indirectly of [his] civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to a person or property of the deprivation of a civil right." *Mettler*, 165 F.3d at 1206. "The plaintiff must show that the conspiracy is fueled by some 'class-based, invidiously discriminatory animus.'" *Bell v. Fowler*, 99 F.3d 262, 270 (8th Cir. 1996). "Speculation and conjecture are not enough to prove a conspiracy exists." *Id.*

Mr. Carmona cannot meet any of the four elements required to prove a conspiracy. While he repeatedly alleges he was conspired against while being held in Crow County Jail, he has produced no facts which support his claims. Moreover, Mr. Carmona's Second Amended Complaint fails to make any mention the conspiracy was fueled by "class based, invidiously discriminatory animus" because he is Hispanic. Lastly, Mr. Carmona only provides "speculation and conjecture" and fails to provide any evidence of how the conspirators acted in furtherance of the object of the conspiracy. Simply put, there is no evidence Defendants entered into a conspiracy to deprive Mr. Carmona of his rights and therefore, any conspiracy claims he alleges should be dismissed in their entirety.

## III. THE UNKNOWN AND UNNAMED PARTIES SHOULD BE DISMISSED.

All claims against unknown defendants should be dismissed. Mr. Carmona commenced this suit against several Defendants including Harvey Doe in an official and individual capacity and Pete Doe, whose capacity is unknown.

Federal Rule of Civil Procedure 4(m) required Mr. Carmona serve all parties within 120 days after filing the Complaint with the Court. Despite the fact this case originated in August 2001, Plaintiff has failed to identify, let alone serve either Pete or Harvey Doe. In *Thornton v. U.S. Department of Justice*, 93 F. Supp. 2d 1057 (D. Minn. 2000), the plaintiff similarly brought an action against unknown and unnamed officers. United States District Court Judge John R. Tunheim dismissed the unknown and unnamed officers based on the extensive amount of time the plaintiff had to identify, name and serve the unnamed officers. *Id. at 1063-1064.*

Similarly, in *Madison v. City of Minneapolis*, 2004 WL 1630953 (D. Minn. July 15, 2004), Judge Tunheim again dismissed unknown and unnamed officers, citing his decision in *Thornton* and further reasoning, "[a]s no information has been presented regarding any of these unnamed defendants, and no further service has been made, the Court will dismiss all claims against them."

Courts have allowed suits to proceed where the identities of parties may be ascertained after reasonable discovery. *See Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). In the case at hand, Defendants completed numerous discovery responses of Mr. Carmona.[2] Accordingly, all claims against Harvey Doe and Pete Doe must be dismissed.

[2] Defendants answered Discovery Requests on Dec. 19, 2001, Feb. 15, 2002, and March 19, 2002.

## IV. MR. CARMONA HAS FAILED TO STATE A CLAIM FOR RIGHT OF ACCESS TO THE COURTS AND LAW LIBRARY UNDER § 1983.

Mr. Carmona claims Defendants impeded his right to access to the Courts by extraditing him to Louisiana and depriving him of legal papers. The United States Supreme Court recognizes two categories of "right to access courts" claims. *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179 (2002). The first category requires an official action aimed at frustrating a current legal process for Plaintiff. See generally *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498 (1977). This clearly does not apply in this case since Mr. Carmona's Complaint references his inability to properly prepare for his writ of habeas corpus motion, a legal action that has already been adjudicated.

The second category requires a plaintiff show official acts have caused the loss or inadequate settlement of a valid claim or the loss of the right to either sue or pursue some other form of relief. *Id.* at 822. The second category is dependent on the plaintiff having a "nonfrivolous, arguable, underlying claim." *Harbury*, 536 U.S. at 415. This requires plaintiffs claiming their right of access was infringed to state, with specificity, in their complaint the underlying claim upon which the right of access claim is based as well as the remedy the plaintiff is seeking. A plaintiff may not simply allege a denial of access to the courts. *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996). Instead, a plaintiff must show an official action hindered their efforts to proceed with or effectively litigate their legal claim. *Id.* Therefore, a plaintiff wishing to recover for a denial of access claim must present a cognizable injury and standing or the court will dismiss plaintiff's right to access claim. *Delew v. Wagner*, 143 F.3d 1219, 1224 (9th Cir. 1998).

Here, Mr. Carmona alleges Defendants denied him access to the courts by denying his requests for access to a law library. *Pl.'s 2nd Amend. Compl. (Docket #40) §III ¶ 9.* Mr. Carmona submitted over 25 inmate request forms asking Defendants to supply him with everything from legal research materials, to photocopies of his work, to court transcripts and documents. *Aff. Cohn (Docket #36) ¶ 10*. Almost all these requests were fulfilled and the few that were denied were done so only if a reason was documented and explained to Mr. Carmona. *Id.* Regardless, Mr. Carmona fails to explain how the denial of his requests was based on an official action, which hindered his legal claim. Mr. Carmona's claim he was denied access is undercut by his prior claim Defendants took his "legal papers, cases, journals of events and facts, trial transcripts and all hearing transcripts…original copies of law suits, law cases, legal briefs…" when he was extradited. The Report and Recommendation of Magistrate Judge Swearingen stated conclusively, "the Court finds little evidence to support Carmona's allegation of actual injury. *Report and Recommendation (Docket #39) page 10.*

Additionally, Mr. Carmona's claim of right of access is unfounded since his writ of habeas corpus was heard and denied by the district court. *Aff. Cohn (Docket #36) ¶ 11*. Mr. Carmona appealed the denial to the Minnesota Court of Appeals which affirmed and ruled Mr. Carmona could be extradited to Louisiana. *Aff. Cohn (Docket #36) ¶ 12; Carmona*, 2001 WL 69505 (rev. denied). Mr. Carmona next petitioned the Minnesota Supreme Court, which denied review. *Id.* Mr. Carmona not only had and lost his day in court to contest his extradition, he had and lost his appeal on the matter. Mr. Carmona

obviously had access to a number of courts. Consequently, Mr. Carmona's claim of right of access should be dismissed.

## V. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THERE WAS NO CONSTITUTIONAL VIOLATION.

To the extent the Court concludes Mr. Carmona has a valid constitutional claim, Defendants are entitled to qualified immunity. An officer is entitled to qualified immunity unless his conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

The qualified immunity analysis requires a three-pronged inquiry. First, Mr. Carmona must establish a violation of a constitutional right. *Saucier v Katz*, 533 U.S. 194, 200 (2001). If a constitutional right is not asserted, the matter must be dismissed. *Cross v. City of Des Moines*, 965 F.2d 629, 632 (8th Cir. 1992). Second, the constitutional right in question must be "clearly established" at the time of the alleged violation. *Saucier*, 533 U.S. at 201. And finally, the Court evaluates "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 204-205; *Graham v. Connor*, 490 U.S. 386, 397 (1989).

In his Complaint, Mr. Carmona continually alleges Defendants violated his Fourth, Fifth, Eighth and Fourteenth Amendment rights, as well as Article IV of the United States Constitution and 42 U.S.C. §§ 1983, 1985, 1986, 1987 and 1988 when Defendants arrested him and extradited him. *Pl.'s 2nd Amend. Compl. (Docket #40) §*

*III.* Mr. Carmona's claims have no factual support. Mr. Carmona claims he was illegally arrested and falsely imprisoned without probable cause or a lawfully issued arrest warrant. However, when Mr. Carmona was arrested for violating his parole the arrest warrant was valid and active. *Aff. Cohn (Docket #36) ¶ 5.* Mr. Carmona's Second Amended Complaint makes it clear he was arrested in connection with a valid warrant when he admits he received a copy of the arrest warrant after he was booked into Crow Wing County Jail. *Pl.'s 2nd Amend. Compl. (Docket #40) §II ¶ 3.* As a result, Mr. Carmona's claims regarding the constitutionality of his arrest are without merit.

Second, Mr. Carmona's claim he was "secretly" extradited in violation of his due process is similarly unfounded. As discussed above, Mr. Carmona was extradited after the Minnesota Court of Appeals affirmed the denial of his writ of habeas corpus and the Minnesota Supreme Court denied review. Therefore, his claim he was illegally and secretly extradited in violation of his due process rights is also unfounded.

Finally, in the absence of any specific claimed violation of a constitutional right, it is futile to challenge whether the Officers' actions were objectively reasonable. Certainly if this Court determines there was a violation of a constitutional right, the actions of the officers were objectively reasonable given the outstanding warrant and extradition order in this case. Therefore, Defendants are entitled to qualified immunity since Mr. Carmona has failed to allege a constitutional violation.

## VI. DEFENDANTS ARE ENTITLED TO OFFICIAL IMMUNITY FOR ANY STATE TORT CLAIMS.

In his Complaint, Mr. Carmona continually refers to "false imprisonment," "false arrest," and "kidnapping." *Pl. 2nd Amend. Compl. (Docket #40) § III ¶ 3.* While it is unclear whether Mr. Carmona intended to assert tort claims of intentional infliction of a confinement, invasion of privacy, or battery, it is clear Mr. Carmona has failed to offer any factual support for these purported claims. Moreover, there is no private civil remedy for the crime of kidnapping. If this Court were to determine Mr. Carmona set forth valid state tort claims of invasion of privacy, battery or false imprisonment, Defendants are entitled to the protection of official immunity. In addition, the claims are time barred pursuant to Minn. Stat. §541.07(1).

Application of official immunity requires a two-step inquiry: "(1) whether the alleged acts are discretionary or ministerial; and (2) whether the alleged acts, even though of the type covered by official immunity, were malicious or willful and therefore stripped of the immunity's protection." *Dokman v. County of Hennepin*, 637 N.W.2d 286, 296 (Minn. App. 2001) (citing *Davis v. Hennepin County*, 559 N.W.2d 117, 122 (Minn. App. 1997)).

There is no question Defendants acted with discretion during the arrest of Mr. Carmona. When officers make an arrest, they utilize their discretion in handling the situation. *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 665 (Minn. 1991) (holding, even though police conduct is affected by regulations, statutes, and case-law, officers making an arrest are engaging in discretionary conduct because they are required to make

split-second decisions based on incomplete information). Furthermore, Defendants used their discretion in restraining and moving Mr. Carmona. On February 5, 2001, Mr. Carmona was told to pack his belongings because he was being extradited to Louisiana. *Pl.'s 2nd Amend. Compl. (Docket #40) § II ¶¶ 21-22.* Mr. Carmona actively resisted Defendants' requests and it was necessary to restrain him. *Id.* After Mr. Carmona was restrained, Defendants packed his belongings to accompany him to Louisiana. *Id.* At no time were Defendants presented with "fixed and designated facts" giving rise to "absolute, certain and imperative execution of a specific duty." Clearly, Defendants were forced to use their discretion to adapt to the ever-changing circumstances of getting Mr. Carmona extradited to Louisiana.

In order to avoid the application of official immunity, Mr. Carmona must demonstrate the officers acted willfully and maliciously. Mr. Carmona's Complaint alleges, "[Defendants] acted wantonly and with callous deliberate indifferences to plaintiff's most fundamental [rights]." *Pl.'s 2nd Amend Compl. (Docket #40) § III ¶ 14.* However, Mr. Carmona provided no specific facts evidencing bad faith. Instead, Mr. Carmona relies on bare allegations in trying to prove Defendants' actions were malicious. Accordingly, the individual Defendants are entitled to the protection of official immunity.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants John Sausen, Don Inwards, Marshall Prescott, Rod McCulley, Dick Ross Harvey Doe and Pete Doe's Motion for Summary Judgment and dismiss all of Mr. Carmona's claims in their entirety,

with prejudice, together with reasonable costs and fees for this vexatious and frivolous action.

IVERSON REUVERS

Dated: August 15, 2005

By s/ Jon K. Iverson

Jon K. Iverson, #146389
Attorneys for Defendants
9321 Ensign Avenue South
Bloomington, Minnesota 55438
(952) 548-7200