UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jesus Carmona,

Plaintiff,

vs.

John Sausen, David Ten Eyck,
David Hermerding, Jennifer Cummings
Tim Friis, Jesse Ventura, Mike Hatch,
Don Inwards, Marshall Prescott,
Rod McCulley, Dick Ross, Harvey (Doe)
and Pete (Doe),

Defendants.

Case No. 00-2447 MJD/RLE

---

Attached as Exhibit B of the Affidavit of Jon K. Iverson is a true and correct copy of *Madison v. City of Minneapolis*, 2004 WL 1630953 (D. Minn. July 15, 2004).

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
Andre MADISON, Plaintiff,
v.
CITY OF MINNEAPOLIS, Officers Robert Kroll, James Scheu, John Bennett, Lyle Delaney, Mark Lanasa, Scott Kossan, Darren Waletzki, James Novak, Jane Doe, Richard Roe, all individually and in their official capacities, Robert Olson, Minneapolis Chief of Police, individually and in his official capacity,
Defendants.
**No. Civ.02-4257(JRT/FLN).**

July 15, 2004.

Albert T. Goins, Sr., Goins & Wood, P.C., Minneapolis, MN, for plaintiff.

James A. Moore, Assistant City Attorney, City Attorney of Minneapolis, Minneapolis, MN, for defendants.

MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TUNHEIM, J.

*1 Plaintiff Andre Madison ("plaintiff") brings this § 1983 action against defendants the City of Minneapolis ("the City"), the Chief of Police, and multiple named and unnamed members of the Minneapolis Police Department [FN1] ("the officers") (collectively "defendants"). Plaintiff alleges that one or more of the defendants violated his rights under state and federal law by shooting him while attempting to execute a "no-knock" warrant and, after he was wounded, kicking him several times while using a racial epithet. Defendants move for summary judgment.

FN1. The named officers are Robert Kroll, James Scheu, John Bennett, Lyle Delaney, Mark LaNasa, Scott Kossan, Darren Waletzki, and James Novak.

I. BACKGROUND

On November 7, 1996, members of the Minneapolis Police Department's Emergency Response Unit (ERU) and Housing Unit executed a no-knock warrant at a duplex residence in Minneapolis. Police had received information from a confidential, reliable informant that individuals were selling marijuana from that address and that during sales they pointed a shotgun at people who purchased from them. The ERU team responsible for entering the residence was supervised by defendant Kroll, and included defendants Scheu, Bennett, Delaney, LaNasa, and Kossan. Members of the Housing Unit, including defendants Waletzki and Novak, provided perimeter security.

At approximately 8:00 p.m., Scheu detonated two "flash bang" diversionary devices in the rear of the residence. Delaney and LaNasa then began battering down the front door to the building. Outside, Waletzki saw someone standing in the rear bedroom holding a long object that appeared to be a shotgun. Waletzki believed that the person was shooting at his officers, and fired his weapon four times into the window toward the front of the house. Novak, also outside, saw the person in the window as well, but could not determine whether the long object was a gun. Novak heard shots seeming to come from the rear bedroom window and fired his weapon at the window. Immediately after Delaney and LaNasa began ramming the interior door to the residence, Scheu also heard shots being fired,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

followed by an eruption of gunfire.

Once Delaney and LaNasa splintered the interior door, they split apart to make room for Bennett. Once the door opened, LaNasa saw an African-American male just inside the door to the right side of the doorway faced down, arms outstretched. Delaney observed plaintiff pointing a long gun in his direction and operating the weapon's slide. Delaney shouted a warning to his fellow officers and fired his handgun into the house. The other officers, including the Housing Unit officers on the rear perimeter, also began firing. As Bennett moved into position, he saw plaintiff standing and pointing a shotgun at him. Bennett shouted, "He's got a gun," and began firing his weapon in the man's direction. Bennett fired at least 20 rounds. Kroll, positioned over Bennett's left shoulder, also observed the man with the shotgun and fired the submachine gun he was carrying into the house. Kroll fired at least 30 rounds into the house. LaNasa was hit by a gunshot, and fell to his knees. As LaNasa tried to move out of the line of fire, he saw a flash in the rear of the house and fired his weapon in that direction. As LaNasa was being removed from the house, officers continued firing into the house. Plaintiff testified that as soon as the officers fired at him, he dropped the shotgun and fell face down to the floor.

***2** Kroll called for a cease-fire and ordered the occupants of the residence to come out. Two men crawled out of the house and were taken into custody. One of the men told the officers that plaintiff was still in the house and had been shot. Plaintiff testified that he was unable to walk out of the residence on his own due to his injuries. He testified that officers yelled at him to "get out here before we start shooting again" and, as he crawled out of the bathroom into the dining area, yelled "Die, nigger, die" and "Die, motherfucker, die, nigger." Plaintiff was found bleeding in the dining room area of the house with a shotgun near his body in the dining room area. According to plaintiff, an unidentified officer kicked him extremely hard in his side. Plaintiff was treated for gunshot wounds to his right arm and his neck. It could not conclusively be proven whether the shotgun had been fired on the date of the incident.

LaNasa recovered a bullet fragment from his bulletproof vest and turned it over to a Minneapolis Police Sergeant. The person who shot LaNasa was never identified, at least in part because no ballistics investigation was conducted. Plaintiff was charged and convicted in Hennepin County District Court with five counts of Assault in the Second Degree, obstruction of legal process, and pointing of a dangerous weapon. The Minnesota Court of Appeals upheld the conviction.

Plaintiff alleges ten separate claims arising from this incident. Counts I and II allege assault and battery. Counts III and IV allege intentional and negligent infliction of emotional distress. Counts V, VI, and VII allege violations of plaintiff's civil rights under 42 U.S.C. § 1983. Count VIII alleges a violation of 42 U.S.C. § 1985. Counts IX and X allege negligence on the part of the City and the individual police officers. Defendants move for summary judgment on all counts based on qualified and official immunity, plaintiff's assault conviction, and failure to make out a prima facie case. For the following reasons, defendants' motion for summary judgment is granted in part and denied in part.

II. SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id* . Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

nonmoving party. *Id.*

***3** The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir.1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.,* 285 F.3d 688, 691 (8th Cir.2002).

III. § 1983--COUNTS V, VI, AND VII [FN2]

FN2. "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978). However, a city may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the city's] officers" or "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Kuha v. City of Minnetonka,* 365 F.3d 590, 2003 WL 23470070 *8 (8th Cir.2003) (quoting *Monell,* 436 U.S. at 690-91. Plaintiff included a *Monell* claim against the City of Minneapolis for failure to train, supervise and/or discipline the officers (count VII). Plaintiff also brought claims against the officers and the Chief of Police in their official capacities, which are properly treated as claims against the City. *See Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (suit against a public employee in his or her official capacity is merely a suit against the public employer). During the hearing on this motion before the Court, plaintiff conceded that there was insufficient evidence to proceed against the City. The Court will therefore dismiss count VII and all claims against the officers and the Chief of Police in their official capacities.

Plaintiff has sued each of the police officers involved in the incident in their individual and official capacities under 42 U.S.C. § 1983. [FN3] Plaintiff alleges excessive force in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments. Plaintiff contends that each of the officers used excessive force (Count V) and failed to prevent other officers' use of excessive force (Count VI). Defendants assert that these claims are barred by *Heck v. Humphrey,* 512 U.S. 477 (1994) and/or the doctrine of collateral estoppel. In the alternative, defendants argue they are entitled to qualified immunity on each of the claims raised against them in their individual capacities.

FN3. Plaintiff also brings suit against Jane Doe and Richard Roe, "unknown and unnamed Minneapolis Police officers, personally, individually, and in their capacities as Minneapolis Police officers ." Discovery has been completed, and no further amendments to the parties are permitted under the scheduling order. As no information has been presented regarding any of these unnamed defendants, and no further service has been made, the Court will dismiss all claims against them. *Thornton v. United States Dept. of Justice,* 93 F.Supp.2d 1057, 1063-64 (D.Minn.2000) (citing *Munz v. Parr,* 758 F.2d 1254, 1257 (8th Cir.1985) ).
Plaintiff also brought suit against Police Chief Robert Olson in his individual capacity. However, plaintiff has presented no evidence indicating that Chief Olson was individually involved in any way in the events in question. Therefore, the Court will dismiss all claims against Police

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Chief Robert Olson in his individual capacity.

A. *Heck v. Humphrey*

In *Heck v. Humphrey,* the Supreme Court held that a plaintiff may not bring a civil action for damages that necessarily challenges the validity of plaintiff's previous conviction or confinement. 512 U.S. at 486-87. Defendants point out that, under Minnesota and federal law, a police officer may properly employ deadly force where he reasonably believes that he or another is in danger of immediate bodily harm or death. Thus, in order for the defendants' use of deadly force to have been excessive, as plaintiff claims in this action, the officers must not have feared or been in danger of immediate bodily harm or death. According to defendants, success on plaintiff's civil claims would therefore necessarily negate some element of plaintiff's conviction in state court of second-degree assault, obstruction of legal process, and pointing of a dangerous weapon. The Court disagrees.

Under Minnesota law, an assault is an act "done with intent to cause fear in another of immediate bodily harm or death." Minn.Stat. § 609.02, subd. 10(1). A conviction for assault does not require that the other person *actually* have feared immediate bodily harm or death. *State v. Soine,* 348 N.W.2d 824, 826 (Minn.Ct.App.1984) (citing *State v. Ott,* 189 N.W.2d 377, 379 (Minn.1971)). Thus, the jury need not have found that the officers actually feared bodily injury or death, and a finding in this action that the officers used excessive force would, therefore, not *necessarily* contradict plaintiff's assault convictions. The same is true of plaintiff's conviction for intentionally pointing a gun.

*4 At first glance, plaintiff's conviction for obstruction of legal process presents a greater obstacle for plaintiff's § 1983 claims in this action. In *Heck v. Humphrey,* the Supreme Court used a conviction for resisting arrest as an example of a conviction that would be necessarily negated by a § 1983 action for violation of the Fourth Amendment right to be free from unreasonable seizures. 512 U.S. at 487, n. 6. Several courts have noted, however, that a valid arrest does not necessarily preclude a claim for use of excessive force. *See e.g. Ingram v. Pavlak,* 2003 WL 22136073, *3 (D.Minn. Sept. 12, 2003) (citing *Sullivan v. Gagnier,* 225 F.3d 161, 165 (2nd Cir.2000) (collecting cases)). Thus, while the example given in footnote 6 is accurate if the § 1983 claim alleges that the initial arrest was false or unsupported by probable cause, it is not accurate if the § 1983 claim alleges use of excessive force in the execution of an otherwise proper arrest. *See Martinez v. City of Albuquerque,* 184 F.3d 1123, 1125-26 (10th Cir.1999); *Nelson v. Jashurek,* 109 F.3d 142 (3rd Cir.1997); *Smithart v. Towery,* 79 F.3d 951, 952-53 (9th Cir.1996); *see also Henson v. Brownlee,* 2001 WL 121987, *1 (8th Cir. Feb. 13, 2001) (*Heck* bars inmate convicted in disciplinary proceeding from bringing a § 1983 claim for violation of First Amendment, but does not bar related Eighth Amendment claim of excessive force). As plaintiff's § 1983 claims do not necessarily call into question his conviction for obstruction of legal process, the Court finds that they are not barred by the holding of *Heck v. Humphrey.* [FN4]

FN4. The Court also notes that even if the Court had found plaintiff's claims to be barred by *Heck v. Humphrey,* such a finding would only extend to defendants' shooting of plaintiff. Plaintiff's allegation that he was gratuitously kicked would need to be addressed separately and would not be barred. *See infra.*

B. Collateral Estoppel

"[C]ollateral estoppel, or issue preclusion, may apply when § 1983 plaintiffs attempt to re-litigate in federal court issues decided against them in state criminal proceedings." *Crumley v. City of St. Paul,* 324 F.3d 1003, 1006 (8th Cir.2003) (citing *Allen v. McCurry,* 449 U.S. 90, 103 (1980)). A federal court "gives a state court judgment the same preclusive effect it would be given under the law of the state in which it was rendered." *Id* . (citing 28 U.S.C. § 1738 ). Under Minnesota law, collateral estoppel will bar a claim if (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Id.* (citing *Willems v. Comm'r of Pub. Safety,* 333 N.W.2d 619, 621 (Minn.1983)).

As discussed above, plaintiff's § 1983 claims regarding use of excessive force are not identical to the criminal charges of which he was convicted in state court. Rather, plaintiff's actions are one of several factors properly considered in determining whether a particular application of force was reasonable or unreasonable. *Graham v. Connor,* 490 U.S. 386, 395 (1989). Given the record before it, the Court has no reason to believe that the reasonableness of the officers' actions was litigated or decided during plaintiff's criminal trial. Plaintiff's § 1983 claims involving use of excessive force are not precluded by collateral estoppel.

C. Qualified Immunity

***5** Where a state official may be entitled to qualified immunity, the Court's first inquiry is whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate violation of a federal constitutional right. *Saucier v. Katz,* 533 U.S. 194, 200 (2001). If they do not, then summary judgment in favor of the defendant is appropriate. If the plaintiff's allegations show such a violation, then the Court must determine whether the right was clearly established, "in light of the specific context of the case." *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* In other words, "if the law did not put [a defendant] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202. "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular officer conduct." *Id.* at 205.

1. Constitutional violations

Where a claim of use of excessive force arises out of an arrest, investigatory stop, or other seizure of a free citizen, it is properly characterized as invoking the Fourth Amendment's guarantee of the right to be free from unreasonable seizures. [FN5] *Graham v. Connor,* 490 U.S. 386, 394-95 (1989). Plaintiff alleges that the officers' extensive gunfire, threats to resume shooting, and kicking him constitute excessive force. These actions took place during execution of a warrant and attempted arrest and are thus properly analyzed under the Fourth Amendment. To establish a seizure in violation of the Fourth Amendment, a plaintiff must prove that (1) his or her person was seized; and (2) the seizure was unreasonable. *Katz v. United States,* 389 U.S. 347 (1967).

FN5. *"[A]ll* claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor,* 490 U.S. 386, 395 (1989) (emphasis original); *Cole v. Bone,* 993 F.2d 1328, 1332 (8th Cir.1993). Further, the Eighth Amendment's protections do not attach until after conviction and sentence. *Ingraham v. Wright,* 430 U.S. 651, 671, n. 40 (1977). The Court therefore does not address plaintiff's other asserted grounds for relief under § 1983.

a. Unreasonable seizure (Count V)

A seizure in the constitutional sense occurs when a government actor has in some way restrained the liberty of a person to a degree that a reasonable person would not feel free to leave. *United States v. Mendenhall,* 446 U.S. 544, 554 (1980) (plurality); *McCoy v. City of Monticello,* 342 F.3d 842, 846- 47 (8th Cir.2003). In this case, the officers executed a no-knock warrant with the intention of arresting anyone in the residence involved in the sale of narcotics. Specifically, they intended to arrest a person or persons who in the course of selling

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

marijuana threatened customers with a shotgun. Plaintiff was seen by multiple officers pointing a shotgun at the officers. The officers responded by shooting him and then arresting him. Plaintiff was clearly seized by the officers.

However, a seizure alone is not sufficient to establish § 1983 liability. *McCoy,* 342 F.3d at 847. The seizure must also be unreasonable. *Brower v. County of Inyo,* 489 U.S. 593, 599 (1989). A claim of excessive force in the effectuation of a seizure is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham,* 490 U.S. at 395-97. Whether the seizure is reasonable is determined by the totality of the circumstances. *Graham,* 490 U.S. at 396. The Court specifically considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. "[T]he 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is made." *Graham,* 490 U.S. at 395 (quoting *Tennessee v. Garner,* 471 U.S. 1, 7-8 (1985)). Whether an officer's use of force is reasonable is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," irrespective of the officer's underlying intent or motivation. *Id.* at 395-97; *McCoy,* 342 F .3d at 848. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97.

***6** A police officer may constitutionally use deadly force to prevent the escape of a suspect where the officer has probable cause to believe the suspect poses a significant threat of death or serious harm to himself or others. *Tennessee v. Garner,* 471 U.S. 1, 11-12 (1985); *Hernandez v. Jarman,* 340 F.3d 617, 622 (8th Cir.2003); *see also* Minn.Stat. § 609.06 (defining appropriate use of deadly force by police). The officers in this case were attempting to execute a no-knock warrant on a group of people known to have at least one weapon. Upon seeing plaintiff holding and apparently trying to use a shot gun, some of the officers fired shots into the house and at plaintiff. After one of the officers was hit by a gunshot, officers continued to fire into the house and towards the known gun. That the officers had secured a no-knock warrant indicates that they, and a judge, considered the situation particularly volatile and dangerous. Attempting to operate a shotgun pointed at police constitutes actively resisting arrest and presents a serious threat of death or harm to the officers. That one of the officers sustained a gunshot wound further supports the officers' assessment that they were in danger. The officers reasonably concluded that they were faced with the threat of death or serious harm. Thus, their responsive use of deadly force was justified and does not constitute a violation of the Fourth Amendment. Summary judgment in favor of the officers is therefore appropriate with respect to shooting plaintiff.

However, the allegations regarding the officers' post-ceasefire actions present a different story. In *Mayard v. Hopwood,* 105 F.3d 1226 (8th Cir.1997), the Circuit determined that slapping and punching a handcuffed and hobbled arrestee while using a racial epithet would be objectively unreasonable and "result in a cognizable constitutional injury." 105 F.3d at 1228. Plaintiff alleges that an officer ran towards him, shouting, and then kicked him several times. The officers deny that this happened. Plaintiff's allegations in this case present a similar situation to that in *Mayard.* Thus, if proven, gratuitously kicking plaintiff after plaintiff was on the floor, was clearly injured, and presented no further threat to the officers would be objectively unreasonable and present a violation of the Fourth Amendment. [FN6]

> FN6. The Court notes that according to plaintiff's recounting of the events, defendant LaNasa, who was shot and pulled from the house, could not have kicked plaintiff. Therefore summary judgment in favor of LaNasa is appropriate with respect to this portion of count V as well.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

b. Failure to prevent (Count VI)

Plaintiff also alleges that each of the officers violated his right to be free from unreasonable seizure by failing to prevent the unconstitutional acts of the other officer(s). The Eighth Circuit has determined that police officers have a duty to intervene in the unconstitutional behavior of fellow officers, and a failure to do so may be actionable under § 1983. *Putnam v. Gerloff,* 639 F.2d 415, 423 (8th Cir.1981) (citation omitted). However, in *Jennings v.. Davis,* 476 F.2d 1271 (8th Cir.1973), the court refused to hold liable officers who did not have "duty, opportunity, or the ability to intervene." 639 F.2d at 1275; *see also Lumsden v. Reichert,* 2003 WL 1610782 (D.Minn.2003).

*7 The Court has determined that shooting plaintiff did not violate plaintiff's constitutional rights. Thus, the officers had no duty to prevent that action. This claim is therefore limited to a failure to intervene in the alleged kicking of plaintiff. As noted above, the parties disagree as to whether this additional violent act took place. However, if the act took place as alleged by plaintiff, it could constitute a violation of plaintiff's constitutional rights. As such, other officers with the opportunity and ability to do so would have had a duty to intervene, and failure to do so could rise to the level of a constitutional violation. [FN7]

FN7. As noted above, defendant LaNasa could not have participated in this alleged act, and summary judgment in his favor is therefore appropriate with respect to count VI.

2. Reasonable under clearly established law

In examining a claim of qualified immunity on summary judgment, the Court's next step is to determine whether the facts allege the violation of a *clearly established* constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 231 (1991) (emphasis added). The court inquires whether the defendant's conduct, although in violation of the Constitution, was nevertheless objectively reasonable in light of the legal rules clearly established at the time of the incident in issue. *Id.* Thus, even if the Court were to find that the officers' conduct violated plaintiff's Fourth Amendment rights, each could nevertheless be immune from liability if reasonable officers could differ on the lawfulness of their actions.

In light of *Mayard,* the Court finds it clearly established in this circuit that an incapacitated, no longer dangerous suspect has a right to be free from further violent actions. *Mayard,* 105 F.3d at 1228; *see also Jones v. Buchanan,* 325 F.3d 520, 534 (4th Cir.2003) ("it was clearly established that a police officer was not entitled to use unnecessary, gratuitous, and disproportionate force"). Thus, the officers are not entitled to summary judgment based on qualified immunity with respect to plaintiff's claim that he was subjected to additional, unnecessary violent treatment. For the same reason, the officers are not entitled to summary judgment with respect to plaintiff's claim that they failed to prevent any alleged additional, unnecessary violent treatment.

IV. CONSPIRACY TO DEPRIVE OF CIVIL RIGHTS (COUNT VIII)

Plaintiff asserts that the officers conspired to shoot, and then kick plaintiff because of his race in violation of 42 U.S.C. § 1985. A successful § 1985 claim requires evidence of a conspiracy, that is, an agreement between the actors to deprive a plaintiff of his civil rights. *Johnson v. City of Shorewood, Minnesota,* 360 F.3d 810, 818 (8th Cir.2004) (citation omitted). On summary judgment, it is the plaintiff's burden to present some facts suggesting that defendants reached an understanding to violate the plaintiff's rights. *Id.* Plaintiff alleges in his complaint the existence of such a conspiracy, but has not provided sufficient evidence to support such a claim. Even assuming that the alleged use of the term "nigger" might indicate a racially discriminatory animus on the part of more than one of the officers, there is no evidence that the officers reached an understanding or agreement to violate plaintiff's rights by kicking him because of his race. Summary judgment in favor of defendants is appropriate.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

V. ASSAULT AND BATTERY (COUNTS I AND II)

***8** Plaintiff makes claims of assault and battery against the officers. The officers, in their individual capacity, assert that they are entitled to official immunity. The City asserts that it is entitled to vicarious official immunity for each of these claims.

A. Official Immunity

Under the state common law doctrine of official immunity, public officials whose duties call for the exercise of discretion are protected from liability based on the exercise of that discretion unless the official is guilty of a willful or malicious wrong. *Pletan v. Gaines,* 494 N.W.2d 38, 40 (Minn.1992). "Malice" or bad faith, which will strip an individual of official immunity, means intentionally doing a wrongful act without legal justification or excuse, or a willful violation of a known right. *Davis v. Hennepin County,* 559 N.W.2d 117, 123 (Minn.Ct.App.1997). For the purposes of determining whether official immunity applies to protect a governmental employee, the question of malice or willfulness is an objective inquiry into the legal reasonableness of an official's actions. *Id.* (citing *State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 571 (Minn.1994)). An official's actions are legally unreasonable if the official commits those acts while having reason to believe they are prohibited. *Id.* Plaintiff must present "specific facts evidencing bad faith" rather than "bare allegations of malice." *Reuter v. City of New Hope,* 499 N.W.2d 745, 751 (Minn.Ct.App.1990) (relying on *Harlow v. Fitzgerald,* 457 U.S. 800 (1982)). Whether or not an officer acted maliciously or willfully is usually a question of fact to be resolved by a jury. *Johnson v. Morris,* 453 N.W.2d 31, 42 (Minn.1990) (citation omitted).

Police officers generally are considered discretionary officials. *Id.; see also Kelly v. City of Minneapolis,* 598 N.W.2d 657, 664 (Minn.1999); *Pletan v. Gaines,* 494 N.W.2d 38, 41 (Minn.1992). In this case, determining the degree of force called for under the circumstances clearly required the officers to exercise their discretion. Their decisions are therefore protected unless malicious or legally unreasonable. Plaintiff claims that defendants' action--namely, shooting him, shouting "die, nigger," threatening to resume shooting, and kicking him--constitute battery and assault that in these circumstances can only be viewed as malicious and not entitled to official immunity.

An assault is a threat to do bodily harm to another with the present ability to carry out the threat. *Dahlin v. Fraser,* 206 Minn. 476, 288 N.W. 851 (Minn.1939); Minn.Stat. § 609.02, subd. 10(1). A battery is an intentional, unpermitted, offensive contact with another. *See, e.g., Paradise v. City of Minneapolis,* 297 N.W.2d 152, 155 (Minn.1980). Police officers may come into contact with individuals for legitimate purposes; thus, the use of force by an officer must be excessive to constitute battery. *See, e.g., Johnson v. Peterson,* 358 N.W.2d 484, 485 (Minn.Ct.App.1984). Minnesota Statute § 609.066 authorizes police officers to use deadly force to protect an officer from apparent death or great bodily harm or to effect the arrest or capture of a person the officer knows or has reasonable grounds to believe has committed or attempted to commit a felony involving the use or threatened use of deadly force.

***9** As discussed in section III(C)(1)(a), the officers were entitled to use deadly force to protect themselves from the apparent danger presented by plaintiff aiming a shotgun at them. Further, the officers had reasonable grounds to believe that plaintiff had committed a felony involving the threatened use of deadly force, i.e. sale of marijuana while pointing a shotgun at the client. Thus, shooting plaintiff and threatening to resume shooting if plaintiff did not cooperate with police commands constitute a privileged use of force precluding state law claims of assault and/or battery.

However, as above, plaintiff's allegations of mistreatment after he was injured and incapacitated must be considered separately from the officers' privileged actions. In addition to being kicked, plaintiff also claims that while he was on the floor, an officer with his weapon drawn ran towards him shouting "die, nigger." Plaintiff asserts that this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

behavior caused him to fear for his life. As set forth above, the parties disagree whether defendant officers used excessive force by kicking plaintiff after he was shot and no longer presented any risk to the officers.

This dispute is sufficient to overcome an official immunity defense on plaintiff's claims of assault and battery. *See, e.g., Elwood,* 423 N.W.2d at 679 ("The doctrine [of official immunity] protects honest law enforcement efforts, and is not intended to shield police brutality."); *see also Rico,* 472 N.W.2d at 107 (stating official immunity does not apply where an official "intentionally commits an act that he or she then has reason to believe is prohibited"). If proven, the facts alleged by plaintiff would permit a jury to infer that in kicking plaintiff after he was incapacitated, defendants maliciously and willfully battered plaintiff. Similarly, a jury could conclude that by running towards plaintiff, who was prone and injured, with weapon drawn, shouting "die," defendants maliciously and willfully assaulted plaintiff. For these reasons, the Court denies defendants' motion for summary judgment on plaintiff's assault and battery claims to the extent that they pertain to the alleged "die, nigger" threat and gratuitous kicking.

B. Vicarious Official Immunity

Where an employee's conduct is protected by official immunity, the employer may also be vicariously immune from liability. *Wiederholt v. City of Minneapolis,* 581 N.W.2d 312, 316-17 (Minn.1998). Vicarious official immunity generally applies for the same reasons that official immunity applies, namely to prevent the "stifling attention" that might prevent employees from making necessary discretionary decisions. *Id.* at 316 (citation omitted). Whether vicarious official immunity is available is a policy question for the court. *Pletan v. Gaines,* 494 N.W.2d at 42.

In *Pletan v. Gaines,* the court weighed the need to protect the public against the concern that the public not be put unnecessarily at risk. *Id.* The court determined that police officers were entitled to official immunity for decisions made during high-speed pursuits because officers required to make immediate decisions under emergency circumstances should be able to do so without fear of later scrutiny or criticism. *Id.* The court recognized that refusing to grant the City vicarious official immunity for the same actions would necessarily require examination of the officers' actions, defeating the purpose of granting the officers official immunity. *Id.* The Minnesota Supreme Court's reasoning and result in *Pletan v. Gaines* holds true in the instant case. Thus, to the extent that the officers are entitled to official immunity from plaintiff's state law claims, the Court finds the City is entitled to vicarious official immunity for the same state law claims. Otherwise, the City remains liable for the torts of its officers. *See* Minn.Stat. § 466.02.

VI. INFLICTION OF EMOTIONAL DISTRESS (COUNTS III AND IV)

***10** Plaintiff has alleged claims of both intentional and negligent infliction of emotional distress. The Court will address each in turn.

A. Intentional (Count III)

To establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that (1) the officers' conduct was extreme and outrageous, (2) the officers' conduct was "intentional and reckless," (3) the officers' conduct caused plaintiff emotional distress, and (4) plaintiff's emotional distress was severe. *Hubbard v. United Press Int'l,* 330 N.W.2d 428, 438 (Minn.1983). Emotional distress must be "so severe that no reasonable man could be expected to endure it." *Id.*

The Court finds that plaintiff has not presented sufficient evidence of severe emotional distress caused by defendants' actions. The sole evidence of emotional distress following the incident is plaintiff's testimony that "emotionally it upsets me because I'm not able to do some of the things I was able to do before." Plaintiff testified that he has considered getting counseling, but has not to date been motivated to do so. These reactions are not "so

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

severe that no reasonable man could be expected to endure [them]," and summary judgment in favor of defendants is therefore appropriate.

B. Negligent (Count IV)

The tort of negligent infliction of emotional distress may be shown "when physical symptoms arise after and because of emotional distress, if the plaintiff was actually exposed to physical harm as a result of the negligence of another." *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.,* 556 N.W.2d 557, 560 (Minn.1996). As above, there is no evidence that plaintiff suffered significant emotional distress or physical symptoms resulting from emotional distress following the incident. The Court therefore grants summary judgment to defendants on this claim.

VII. NEGLIGENCE (COUNTS IX AND X)

Plaintiff asserts claims of negligence against the City (Count IX) and the officers (Count X). In both he asserts that the defendant "owed a duty to plaintiff to protect him and ensure that his rights were protected and honored." Further, defendant's "actions were negligent and malicious, and totally and completely violated plaintiff's civil rights." Beyond these conclusory statements, plaintiff provides no further support for or information about these claims. Federal Rule of Civil Procedure 8(a) requires only that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, "specificity sufficient to supply fair notice of the nature of the action will withstand a motion [to dismiss]." *Bramlet v. Wilson,* 495 F.2d 714, 716 (8th Cir.1974) . However, at the summary judgment stage, the bar is higher and a plaintiff must provide at least some support for his claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). While it is the Court's duty to examine carefully any claim made by a plaintiff to determine whether it states a legal basis for recovery, it is not this Court's job to research the law to create an argument that is not otherwise articulated or supported by citations and authorities. *See Lusby v.. Union Pacific R.R. Co.,* 4 F.3d 639, 642 (8th Cir.1993). In this case, plaintiff has not provided the Court with any argument specifically addressed to Counts IX and X or any legal support for the claims. The Court therefore will not address the claims further and dismisses them.

ORDER

***11** Based on the foregoing, all the records, files, and proceedings herein, IT IS HEREBY ORDERED that defendants' Motion for Summary Judgment [Docket No. 10] is GRANTED in part and DENIED in part as follows:

1. Count I is dismissed except as it relates to allegations that defendants ran at plaintiff shouting "die, nigger";

2. Count II, V, and VI are dismissed with prejudice except as they relate to allegations that defendants kicked plaintiff and/or failed to prevent such action;

3. Count III, IV, VII, VIII, IX, and X are DISMISSED with prejudice.

4. As no claims remain against defendant Robert Olson, he is DISMISSED from the case.

5. As no claims remain against defendant Mark LaNasa, he is DISMISSED from the case.

6. Defendants Jane Doe, Richard Roe, and unknown and unnamed Minneapolis Police officers are DISMISSED from the case.

Not Reported in F.Supp.2d, 2004 WL 1630953 (D.Minn.)

**Motions, Pleadings and Filings (Back to top)**

- 0:02cv04257 (Docket) (Nov. 06, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.