UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jesus Carmona,

Plaintiff,

Case No. 00-2447 MJD/RLE

vs.

John Sausen, David Ten Eyck,
David Hermerding, Jennifer Cummings,
Tim Friis, Jesse Ventura, Mike Hatch,
Don Inwards, Marshall Prescott,
Rod McCulley, Dick Ross, Harvey (Doe)
and Pete (Doe),

Defendants.

Attached hereto as Exhibit A to the Affidavit of Jon K. Iverson is a true and correct copy of *Mahamoud v. Schrum*, 2002 WL 31248023 *5 (D. Minn. Oct. 4, 2002).

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.
Nassir Abdi MAHAMOUD, Plaintiff,
v.
Sergeant Dwight Chuck SCHRUM and City of Litchfield, Defendant.
**No. Civ. 01-1375DWFSRN.**

Oct. 4, 2002.

Jordan S. Kushner, Kushner Law Office, Minneapolis, MN, for Plaintiff.
Jon K. Iverson, Kafi E. Linville, and Paul D. Reuvers, Iverson Reuvers, LLC, Bloomington, MN, for Defendants.

MEMORANDUM OPINION AND ORDER

FRANK, J.

Introduction

*1 The above-entitled matter came on for hearing before the undersigned United States District Judge on July 30, 2002, pursuant to Defendants' Motion for Summary Judgment. In the Complaint, Plaintiff Nassir Abdi Mahamoud ("Plaintiff") asserts a claim pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Specifically, Plaintiff alleges that the Defendants violated his right to be free from unreasonable search and seizure under the Fourth Amendment, his Substantive and Procedural Due Process rights under the Fifth and Fourteenth Amendments, and his right to Equal Protection of the laws under the Fourteenth Amendment. Plaintiff also alleges common law claims for false arrest and imprisonment, malicious prosecution, and negligence. For the reasons set forth below, Defendants' motion is granted.

Background

Defendant Sergeant Dwight Schrum ("Schrum") is a police officer employed by the City of Litchfield. The City of Litchfield, also a Defendant, is a municipality in the State of Minnesota.

On March 12, 2000 the Willmar Police Department received a report of a child "taken" from her home around midnight of that evening. Willmar Police Officers Hanson and Jahnke responded to the call. The officers questioned the victim's [FN1] aunt, Muryun Mohamoud, and grandmother, Fodum Jam. Ms. Mohamoud reported that, despite her objections, her niece, 12 years old at the time, had voluntarily gone with a group of six individuals in a car to purchase batteries and had not yet returned.

> FN1. By referring to the juvenile girl as the "victim," the Court means only to indicate that the girl was allegedly sexually assaulted. The Court does *not* mean to imply that the Plaintiff was the perpetrator of any sexual assault which may have occurred.

Ms. Mohamoud stated that the Plaintiff, a friend of her brother, came to the apartment and asked for Ms. Mohamoud's brother, who was not there at the time. The victim indicated that she needed batteries for her CD player, and Plaintiff offered to take her to the store to purchase them. The victim voluntarily left with the Plaintiff despite Ms. Mohamoud's objections. The driver of the vehicle told Ms. Mohamoud that they would be going to St. Cloud. When the victim had not returned from the store by 2:00 a.m., Ms. Mohamoud called the police.

On March 12, 2000, Officer James Felt ("Felt") spoke with the victim at her home. The victim told Felt that she left with several individuals, including the Plaintiff, the evening before to purchase batteries. During the March 12 interview, the victim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

stated that she went with the individuals to another individual's house, possibly in Marshall, Minnesota, where she stayed and watched movies. During this interview, the victim did not claim that she had been sexually assaulted. The victim stated that Plaintiff brought her home the following morning.

On the morning of March 13, 2000, Felt met with the victim, her grandmother, and an interpreter at the Law Enforcement Center. At this time the victim stated that she had been raped by Plaintiff on the evening in question. The victim described Plaintiff. The victim stated, again, that Plaintiff drove her home the morning after the incident. At Felt's suggestion, the victim was then examined and a sexual assault kit was completed at Rice Memorial Hospital. Felt also collected clothing the victim was wearing at the time of the incident.

***2** On the same day, the Willmar Police Department notified Schrum at the Litchfield Police Department that a possible sexual assault had occurred in the City of Litchfield on the previous day. On March 14, 2000, the Litchfield Police Department received Officer Felt's reports regarding the sexual assault. The case was assigned to Schrum. Schrum reviewed the reports and consulted with the Meeker County Attorney, Gayle Borchert ("Borchert"). Borchert advised Schrum that, based on the police reports and identification of the suspect, there was sufficient evidence to issue an arrest warrant for Plaintiff.

On April 13, 2000, Schrum and Borchert signed a criminal complaint charging Plaintiff with First Degree Criminal Sexual Conduct. Subsequently, District Court Judge Steven Drange issued a warrant for Plaintiff's arrest.

On May 11, 2001, more than a year after the alleged sexual assault, Plaintiff was pulled over on a routine traffic violation. When the officer discovered the outstanding warrant, he arrested the Plaintiff. Plaintiff was detained in the Meeker County Jail on charges of first-degree criminal sexual conduct. On May 14, 2001, Judge Drange issued an order holding Plaintiff in the Meeker County Jail on a $30,000 unconditional bond or a $5,000 conditional bond. Plaintiff did not post bond and remained in jail.

Plaintiff's attorney subpoenaed the victim to an Omnibus hearing on June 25, 2001. At the hearing, the victim failed to identify Plaintiff as the perpetrator. As a result, charges against Plaintiff were dismissed, and he was released from jail at that time.

Plaintiff subsequently filed the complaint before the Court alleging various constitutional and common law claims. The gravamen of Plaintiff's complaints is that Schrum and the City of Litchfield lacked sufficient probable cause to swear out the criminal complaint against him.

Discussion

1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir.1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action." ' Fed.R.Civ.P. 1. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record, which create a genuine issue for trial. *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

forth specific facts showing that there is a genuine issue for trial. *Andersen v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Krenik,* 47 F.3d at 957.

2. Qualified Immunity

***3** Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Mitchell v.. Forsyth,* 472 U.S. 511, 526 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability." *Id.* (emphasis in the original).

In determining whether a public official is entitled to qualified immunity, the Court performs a two-part inquiry. First, the Court must determine whether, "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right[.] " *Saucier v. Katz,* 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* On the other hand, if the Court makes an affirmative finding, the Court must proceed and consider "whether the right was clearly established." *Id.* This must be determined in light of the specific context of the case. " 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." ' *Id.* at 202 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

The Court first considers the allegation that Schrum violated Plaintiff's Fourth Amendment rights by causing Plaintiff to be arrested and detained without sufficient probable cause. The Court finds that Schrum's actions did not violate Plaintiff's constitutional rights because Schrum had probable cause to take the steps he took which ultimately led to Plaintiff's arrest and detention, and Schrum's actions were objectively reasonable.

Probable cause to make an arrest exists when "the totality of circumstances demonstrates that a prudent person would believe that the arrestee has committed a crime or was committing a crime." *Kuehl v. Burris,* 173 F.3d 646, 651 (8th Cir.1999) (citing *U.S. v. Washington,* 109 F.3d 459, 465 (8th Cir.1997)). Based upon the police reports provided by the Willmar Police Department, a prudent person would believe that the Plaintiff committed a crime, and, as a practical matter, it is objectively reasonable for a police officer to rely upon official reports generated by other police officers, even police officers from other jurisdictions. The reports provided by the Willmar Police Department contained sufficient information to support the identification of Plaintiff as the perpetrator. The report named Plaintiff as the perpetrator. The victim identified Plaintiff as the perpetrator. The victim's Aunt and Grandmother identified Plaintiff as the man who came to their apartment the evening the victim was "taken." The Grandmother identified Plaintiff as the person who returned the victim to her home the morning after the incident. A reasonable, prudent person presented with these facts would reasonably conclude that the Plaintiff committed a crime. FN2

FN2. The Plaintiff relies, in part, on the testimony of his expert witness, Anthony Bouza, a former police chief with 36 years of experience, to support his contention that a positive eyewitness identification or physical evidence was required to establish probable cause for an arrest. The affidavit of Mr. Bouza was untimely. However, even assuming it was submitted in a timely fashion, Mr. Bouza's opinion is without any foundation and is entirely conclusory in nature. Moreover, to the extent that Mr. Bouza's opinion implicates the ultimate legal issue of whether probable cause exists, not only is the opinion without any factual or legal foundation, but it is quite simply wrong.

***4** Moreover, Schrum presented his documentation to the Assistant County Attorney who determined that she had sufficient evidence to charge the Plaintiff with First-Degree Criminal Sexual Assault. Subsequently, Judge Drange issued a warrant for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Plaintiff's arrest on this charge. Schrum's own determination that the Plaintiff had committed a crime was validated by the decision of these additional authorities. While Schrum's actions must be judged on their own merits, and many people making a mistake does not render it any less of a mistake, the fact that both the Assistant County Attorney and the judge agreed with Schrum's conclusion that there was probable cause lends credence to the Court's conclusion that Schrum's actions were objectively reasonable.

Plaintiff argues that an officer is not entitled to qualified immunity for an unlawful arrest where an officer failed to conduct a reasonable investigation. *Kuehl,* 173 F.3d at 650. Specifically, Plaintiff notes that "[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." *Id.* The arresting officer is required to analyze the weight of all the evidence, exculpatory and inculpatory, when determining probable cause. Plaintiff argues that Schrum did not pay sufficient attention to Plaintiff's protestations of innocence and violated a constitutional duty by not bringing the victim in to positively identify the Plaintiff as the perpetrator. The Court does not agree.

First, the Court notes that a criminal defendant's claims of innocence are not, on their own, " exculpatory evidence." Moreover, Plaintiff's real claim is not that Schrum ignored exculpatory evidence-because, at the time of the arrest, the record contained no such exculpatory evidence-but that Schrum did not seek out such exculpatory evidence with sufficient zeal. The Court finds that the Plaintiff misconstrues the scope of the officer's constitutional obligation to investigate. Schrum reasonably relied upon the Willmar Police Department reports; those reports were generated after a reasonable, if not entirely comprehensive, investigation; and those reports contained sufficient inculpatory evidence to strongly indicate that Plaintiff had committed a crime. Beyond that, the Court finds no support for any additional constitutional obligation for Schrum to investigate further.

Plaintiff also asserts that his equal protection rights were violated by Schrum's conduct. In establishing an equal protection violation, "the key requirement is that plaintiff allege and prove unlawful, purposeful discrimination." *Batra v. Bd. of Regents of the Univ. of Nebraska,* 79 F.3d 717, 722 (8th Cir.1996). Neither the Complaint nor the record presented to the Court contain any reference to unlawful or purposeful discrimination by Schrum or any other employee of the City of Litchfield. Rather, Plaintiff simply asserts, as part of his § 1983 claim, that his Fourteenth Amendment rights were violated, but provides absolutely no factual basis for such a claim.

***5** The Court finds that the facts alleged by the Plaintiff present no constitutional violation, either clearly defined or otherwise. Accordingly, the Court finds that Schrum is entitled to qualified immunity on all of Plaintiff's constitutional claims.

3. Official Immunity

Plaintiff has asserted three common law claims: malicious prosecution, negligence, and false arrest and imprisonment. The Court finds that Schrum is protected from liability on these claims by the doctrine of official immunity.

Under Minnesota law, a public official is entitled to official immunity from state law claims when the official's duties require the exercise of discretion or judgment. *See Dokman v. County of Hennepin,* 637 N.W.2d 286, 296 (Minn.Ct.App.2001). Official immunity shields a public official from liability for all discretionary decisions, but it does not protect that official's "ministerial duties," that is, duties that are "absolute, certain or imperative." *Watson v. Metro Transit Comm'n,* 553 N.W.2d 406, 414 (Minn.1996). Moreover, official immunity does not shield public officials from personal liability for discretionary acts which are malicious or willful. *See Dokman v. County of Hennepin,* 637 N.W.2d at 296. "Generally, police officers are discretionary officers entitled to [official] immunity." *Johnson v. Morris,* 453 N.W.2d 31, 42 (Minn.1990).

Plaintiff asserts that Schrum is not entitled to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

official immunity because his acts were ministerial. The Court does not find Plaintiff's argument persuasive.

First, the crux of Plaintiff's claim against Schrum is that he did not adequately investigate the claims against Plaintiff before taking them to the County Attorney, but Schrum's investigation and decision to approach the County Attorney are clearly discretionary acts shielded by official immunity.

Second, to the extent that Plaintiff's claims are predicated on Schrum's signature on the official Complaint, that act, too, is discretionary. The Complaint requires the signing officer to swear that "there is probable cause to believe that the defendant committed the [charged] offense(s)." Plaintiff relies upon Schrum's deposition testimony in which he indicated that the determination of probable cause is one generally left to the County Attorney; because Schrum denies any obligation to make an independent determination of probable cause, Plaintiff argues, Schrum is not entitled to official immunity. However, a closer reading of Schrum's deposition testimony makes clear that Schrum was referring to the decision of whether to charge or prosecute a defendant; Schrum correctly indicated that that probable cause determination is the province of the County Attorney. The Complaint requires the signing officer to attest only to whether there is probable cause to believe that the defendant committed the alleged crime. Schrum did not deny the need for him to make an independent determination that there is probable cause to believe that the facts are as stated in the Complaint. That probable cause determination is the province of the officer, and it is a discretionary function entitled to official immunity.

***6** Moreover, the Court finds that there is no evidence in the record nor allegation in the Complaint that Schrum carried out his discretionary duties in a willful or malicious way which might bring his actions outside the shield of official immunity. As a result, the Court finds that the doctrine of official immunity shields Schrum from liability for Plaintiff's common law claims.

4. The City of Litchfield

Because the Court finds that there is no basis for imposing liability on Schrum, there is no basis for imposing vicarious liability on the City of Litchfield. *See City of Los Angeles v. Heller,* 475 U.S. 796, 798-99 (1986) (no award of damages against a municipality based on the actions of one of its officer where there has been no showing of constitutional harm by the officer); *Veneklase v. City of Fargo,* 248 F.3d 738, 748 (8th Cir.2001) (en banc), *cert. denied,* 122 S.Ct. 42 (2001) (a municipality cannot be held liable for inadequate training or supervision when the officers did not violate plaintiff's constitutional rights); *Dokman v. County of Hennepin,* 637 N.W.2d 286, 297 (Minn.Ct.App.2001) ("Vicarious official immunity protects a governmental entity from liability based on the acts of an employee who is entitled to official immunity."). Accordingly, the Court finds that the City of Litchfield is entitled to summary judgment on all claims.

For the reasons stated, IT IS HEREBY ORDERED:

1. Defendants' Motion for Summary Judgment (Doc. No. 18) is GRANTED; and

2. The COMPLAINT is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

D.Minn.,2002.
Mahamoud v. Schrum
Not Reported in F.Supp.2d, 2002 WL 31248023 (D.Minn.)

Briefs and Other Related Documents (Back to top)

• 0:01CV01375 (Docket) (Jul. 27, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.