UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Jesus Carmona,

Plaintiff,

vs. REPORT AND RECOMMENDATION

John Sausen, David Ten Eyck, David Hermerding, Jennifer Cummings, Tim Friis, Jesse Ventura, Mike Hatch, Don Inwards, Marshall Prescott, Rod McCulley, Dick Ross, Harvey (Doe), and Pete (Doe),

Defendants. Civ. No. 00-2447 (MJD/RLE)

* * * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendants Jesse Ventura ("Ventura"), Mike Hatch ("Hatch"), David Ten Eyck ("Judge Ten Eyck"), David Hemerding ("Hermerding"), and Jennifer Cummins ("Cummins")(collectively the "State Defendants"), to Dismiss; and the Motion of the Defendants John Sausen ("Sausen"),

Don Inwards ("Inwards"), Marshall Prescott ("Prescott"), Rod McCulley ("McCulley"), Dick Ross ("Ross"), Harvey Doe, and Pete Doe (collectively, the "County Defendants"), for Summary Judgment.[1]

The Plaintiff appears pro se, the State Defendants appear by John S. Garry, Assistant Minnesota Attorney General, and the County Defendants appear by Jon K. Iverson, Esq. For reasons which follow, we recommend that the State Defendants' Motion to Dismiss be granted, and that the County Defendants' Motion for Summary Judgment be granted, as well.

## II. Factual and Procedural History

On April 24, 1984, a Jury in Louisiana found the Plaintiff guilty on two (2) Counts of armed robbery. See, Affidavit of Kafi E. Cohn ("Cohn Aff."), Docket No. 36, Ex. A., at 1. The Plaintiff was sentenced to twenty-five (25) years in prison, but

[1]The other named Defendant in this matter, Tim Friis ("Friis"), has also filed a Motion for Summary Judgment. See, Docket No. 122. However, that Motion was filed on January 13, 2006. The Plaintiff filed a response to that Motion on January 26, 2006. See, Docket No. 128. Pursuant to our Order of December 16, 2005, Friis has until March 2, 2006, in which to file a Reply memorandum. See, Order, Docket No. 111; see also, L.R. 7.1(b)(1)(C), Local Rules for the United States District Court for the District of Minnesota. Accordingly, we withhold any discussion of the merits of Friis' Motion for Summary Judgment, until such time as we have received on the submissions of that Motion.

was released, on parole, on June 14, 1996. Id., Ex. B. As a condition of his release, the Plaintiff was required to remain within the boundaries of Jefferson District, in the State of Louisiana, until July 10, 2008, or until other action by the Louisiana State Board of Parole. Id., Ex. C, at 2. On January 5, 2000, the State of Louisiana Department of Public Safety, and Corrections Board of Parole, issued a Warrant for the Plaintiff's Arrest, which arose from charges that he had violated the conditions of his parole by leaving the State of Louisiana. Id., Ex. B.

On May 21, 2000, Tim Friis ("Friis"), who is a police officer with the City of Deerwood, Minnesota, arrested the Plaintiff in Brainerd, Minnesota, and delivered him to the custody of Ross, who is the Crow Wing County Sheriff, at the Crow Wing County Jail. See, Second Amended Complaint, at Part 2, ¶¶1-2; Cohn Aff., Ex. D. The Plaintiff alleges that he informed the deputies that "he is not on parole, nor has he ever been placed on parole in his life." Second Amended Complaint, at Part 2, ¶2. The following day, the Plaintiff was given a request form, in which he asked for access to a law library, books, paper, pen or pencil, and a copy of the Arrest Warrant. Id. at ¶3. The County Defendants allege that the Plaintiff received, upon his booking, an inmate handbook, which explained the Crow Wing County Jail's rules and procedures, and included the required protocol for acquiring materials from the facility's law

library. Cohn Aff., Ex. G. During his stay at the jail, the Plaintiff completed at least twenty-five (25) inmate request forms for legal materials. Cohn Aff., Ex. I. While some of the Plaintiff's requests were fulfilled, others were denied, and an explanation was given in those instances. Id.

On May 23, 2000, the Plaintiff appeared in Criminal Court, and was denied bail. Second Amended Complaint, at Part 2, ¶4. On May 26, 2000, the Plaintiff filed an Amended Writ of Habeas Corpus to the State Court. Id. at ¶5. On July 21, 2000, Ventura, who was the Governor of Minnesota at that time, issued a Rendition Warrant which directed that the Plaintiff be extradited to the State of Louisiana. Cohn Aff., Ex. E. The Plaintiff alleges that the Rendition Warrant was not issued prior to "August of 2000," and that the "extradition warrant was pre-dated for July 21, 2000" because, "on July 24, 2000, John Sausen, stated for the record, that they was [sic] still waiting on an extradition warrant to be signed." Second Amended Complaint, at Part 2, ¶11.

On August 14, 2000, the Plaintiff appeared, pro se, in State District Court before the Defendant Ten Eyck, who is a State District Judge ("Judge Ten Eyck"). Id. at ¶15-16. The Plaintiff alleges that, "[Judge] Ten Eyck, John Sausen and David Hemerding, conspired to deprive the plaintiff of legal representation, by ordering that all legal representation be removed from representing the plaintiff, and forcing the

plaintiff at the same time to forego a Writ of Habeas Corpus Hearing and Extradition hearing by himself against the defendants." Id. at ¶15.

On August 15, 2000, Judge Ten Eyck denied the Plaintiff's Writ of Habeas Corpus, and ordered that the Plaintiff be delivered to the custody of the State of Louisiana. Id. at ¶16; Carmona v. Ross ("Carmona I"), Case No. K7-00-1232 (Minn. Dist. Ct., August 15, 2000), Cohn Aff., Ex. J. In so ruling, Judge Ten Eyck noted, in part, as follows:

> The crux of Mr. Carmona's argument is that he was sentenced without the benefit of parole or early release and that therefore, it is impossible for him to be on parole and impossible for him to have violated conditions of parole. However because such a legal argument is based entirely on Louisiana state law, it would be wholly inappropriate for this Court to give it substantial consideration. This Court's analysis is limited to a procedural examination of the extradition documents. [citation omitted]. It is sufficient for extradition if the demanding authority provides proper extradition documents and warrants, which, on their face, allege that the petitioner has "broken the terms of * * * parole." State ex. rel. Kirkendoll v. Zacharias, 410 N.W.2d 56 (Minn. App. 1987). The State of Louisiana has supplied this Court with documents that are sufficient on their face and which allege a conviction of [the Plaintiff], his subsequent release, and a violation of his release conditions. This same analysis applies to [the Plaintiff]'s conflicting claims that he was improperly convicted and that his conviction was subsequently overturned. He provided no evidence that supported such claims and furthermore, the

> extradition papers from Louisiana reflecting his conviction, sentencing, and condition of his release are in order on their face.

Carmona I, supra at 2-3.

Judge Ten Eyck's ruling was affirmed by the Minnesota Court of Appeals, and the Minnesota Supreme Court subsequently denied review. See, State v. Carmona, 2001 WL 69505 (Minn. App., January 30, 2001), rev. denied (Minn., March 13, 2001). The Plaintiff was extradited to Louisiana on February 5, 2001, prior to the issuance of the Minnesota Supreme Court's denial of review. Second Amended Complaint, at Part 2, ¶20-21.

The Plaintiff then commenced this action, under Title 42 U.S.C. §1983, alleging that Ross, and his deputies, who are identified as the John Doe Defendants, denied him access to the Courts, while he was being detained in the Crow Wing County Jail. Shortly thereafter, the Plaintiff amended his Complaint to assert claims against Hermerding, and Cummins, who are alleged to be Crow Wing County Public Defenders, McCulley, Denny Peterson,[2] and Prescott, who are alleged to have been

[2]Denny Peterson was not named as a Defendant in the Plaintiff's Second Amended Complaint, and is not presently a party to this action.

employed at the Crow Wing County Jail, Crow Wing County, and the City of Brainerd, Minnesota. See, Docket No. 9.

Thereafter, the Plaintiff amended his Complaint a second time, in order to assert claims against Sausen, who is alleged to be the Assistant District Attorney for Crow Wing County; Judge Ten Eyck, who is alleged to be a State Court Judge; Friis, who is alleged to be a Police Officer for the City of Deerwood, Minnesota; Ventura, who was the Governor of Minnesota at the time; Hatch, who is the Attorney General for the State of Minnesota; Inwards, who is alleged to be a Crow Wing County Sheriff's Deputy; Harvey Doe, who is the unidentified police officer who effected the Plaintiff's arrest; and Pete Doe. See, Docket No. 40. The Second Amended Complaint includes claims under Title 42 U.S.C. §§1983, 1985, 1986, 1987, and 1988, for alleged violations of the Plaintiff's rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as a number of torts, including aggravated kidnapping, false arrest, false imprisonment, and conspiracy to deprive the Plaintiff of his civil rights. See, Second Amended Complaint, Docket No. 40, at 1.

The Plaintiff claims that all of the named Defendants conspired "to carry out their scheme to falsely arrest; kidnap; falsely imprisoned [sic]; illegally extradite and

deprive the plaintiff of his legal papers, affects, etc., in violation of the plaintiff's constitutional civil rights of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution." Id. at Part 3, ¶20. The Plaintiff also contends that Friis, and Harvey Doe, under the color and authority of the State, committed various torts, and constitutional violations, in executing the Arrest Warrant, and in delivering the Plaintiff to the Crow Wing County Jail. Id. at ¶¶1-3.

The Complaint also contends that Hemmerding, and Cummings, rendered ineffective assistance as counsel, and deprived the Plaintiff of access to the Courts. Id. at ¶¶4-6. In addition to the conspiracy claims, the Defendants Sausen, Ross, and Inwards, are alleged to have "unlawfully and secretly extradited the plaintiff to the State of Louisiana[,] without allowing the [P]laintiff to fully exhaust his State and Federal Judicial Remedies." Id. at ¶7. Inwards is further alleged, in addition to Pete Doe, Prescott, and McCulley, to have deliberately withheld the Plaintiff's property, which encompassed his legal research and work product. Id. at ¶8. From his Complaint, the Plaintiff also appears to contend that Sausen acted improperly in his role as a Prosecutor, and that Ross, Ventura, and Hatch, acted in "deliberate indifference" to the Plaintiff's circumstances, and allowed the extradition process to proceed. Id. at ¶¶17-19.

By Order dated August 14, 2003, the District Court dismissed the Plaintiff's Complaint. While the Court ruled on the substantive allegations against Ross, the other Defendants were dismissed from the suit as a result of the Plaintiff's failure to effect service of process. On appeal, the Order of the District Court was affirmed in part, and reversed in part, in that the Court of Appeals held that the Plaintiff should have been afforded an additional one hundred and twenty (120) days in which to effect service on those Defendants who were named, for the first time, in the Second Amended Complaint. See, Carmona v. Ross ("Carmona II"), 376 F.3d 829, 830 (8th Cir. 2004). The Court affirmed the dismissal of the remaining Defendants, but without prejudice.[3] Id. at 831. The Plaintiff has since effected service on each of the remaining Defendants, with the exception of the Doe Defendants. See, Docket No. 95.

III. Discussion

A. The State Defendants' Motion to Dismiss.

1. Standard of Review. "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and

[3]Several of the Defendants, who were dismissed from the suit without prejudice, have since been served with process, have answered the Plaintiff's Complaint, and have filed dispositive Motions.

construe those facts in the light most favorable to the [nonmoving party]." Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.23d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party. Maki v. Allete, Inc., supra at 742. "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998); see also, Maki v. Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law

and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(b), Federal Rules of Civil Procedure. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003). Since our decision, with respect to the State Defendants, rests entirely upon the pleadings, materials within the public record, and materials that are necessarily embraced by the pleadings, we analyze the Defendants' Motion, under the framework of Rule 12(b)(6), rather than under the regimen of Rule 56.

2. Legal Analysis. The State Defendants have filed a Motion to Dismiss, under Rule 12(b), Federal Rules of Civil Procedure, upon the assertion that the Plaintiff's claims are barred by the Rooker-Feldman doctrine, see, Rooker v.

Fidelity Trust Co., 263 U.S. 413, 416 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983), the doctrine of collateral estoppel, and alternatively, on the ground that the claim against Judge Ten Eyck is barred by the doctrine of judicial immunity, and the claims against Hermerding, and Cummins, fail to state a viable legal claim. See generally, State Defendants' Memorandum in Support of Motion to Dismiss, Docket No. 80. As necessary, we address each of those bases, in turn.[4]

---

[4]We also note in passing that the Plaintiff's claims, under certain of the Federal Statutes he cited in his Second Amended Complaint, fail to present a claim upon which relief can be granted. For example, the Plaintiff makes no mention of any racial or class-based, invidiously discriminatory animus, or any factual basis that would support such an allegation, in his Second Amended Complaint, and therefore, any claims arising under Title 42 Section 1985, as a consequence must fail. See, Carpenter Outdoor Advertising Co. v. City of Fenton, 251 F.3d 686, 690 (8th Cir. 2001), citing Bell v. Fowler, 99 F.3d 262, 270 (8th Cir. 1996). Furthermore, since a Section 1986 claim cannot be advanced in the absence of a Section 1985 claim, the Plaintiff's Section 1986 claim must also be dismissed. See, Gatlin ex rel. Estate of Gatlin v. Green, 362 F.3d 1089, 1095 (8th Cir. 2004), citing Jensen v. Henderson, 315 F.3d 854, 863 (8th Cir. 2002).

As further examples, we also note that the Plaintiff has not alleged a basis for relief under Section 1987, and we recognize that Section 1987 does not allow a private cause of action. See, Cartano v. Santa Clara County, 2002 WL 1677723 *5 (N.D. Cal., July 19, 2002); Beacham v. Annerino, 1993 WL 266540 *3 (N.D. Ill., July 15, 1993); see also, Inmates of Attica Correctional Facility v. Rockefeller, 477 F.3d 375, 380-82 (2nd Cir 1973)(discussing Section 1987). Similarly, Section 1988 does not provide an independent Federal cause of action either, but is, instead, recognized as a procedural

1. Judicial Immunity. The Plaintiff claims that Judge Ten Eyck "use[d] his authority as Judge, to criminally violate [the Plaintiff's] most fundamental procedural and substantial due process and equal protection of the law." Second Amended Complaint, at Part 3, ¶10. The Plaintiff alleges that those violations occurred when Judge Ten Eyck "conspired with David Hemerding and John Sausen, to willfully hold a private court hearing outside of the public eye and view," and "held a hearing to deprive the plaintiff his right to a fair and impartial trial." Id. Additionally, the Plaintiff contends that Judge Ten Eyck "[c]onspired with David Hemerding and John Sausen, to illegally strip the plaintiff of all [sic] any legal court appointed representation; and forced the plaintiff into a habeas corpus trial, unprepare[d] or [without] any access to a law library," and knowingly, and wrongfully, denied the Plaintiff's Petition. Id. at ¶11-13. All of the Plaintiff's claims arise from Judge Ten Eyck's judicial acts in conducting a Hearing on the Plaintiff's State Habeas Corpus Petition, and his subsequent ruling which denied that Petition. Id. at ¶¶10-13.

---

rule. See, Moor v. County of Alameda, 411 U.S. 693, 702-03, 704 n.13 (1973); Sarmiento v. Texas Board of Veterinary Medical Examiners, 939 F.2d 1242, 1245 n.4 (5th Cir. 1991); Schroder v. Volcker, 864 F.2d 97, 99 (10th Cir. 1988); McLaughlin v. City of LaGrange, 662 F.2d 1385, 1388 n.1 (11th Cir. 1981), cert. denied, 456 U.S. 979 (1982); Stagemeyer v. County of Dawson, 205 F. Supp. 2d 1107, 1115 (D. Neb. 2002).

Where, as here, a Judicial Officer acts within his jurisdiction to perform a judicial function, the Judicial Officer is absolutely immune from suit. See, Mireles v. Waco, 502 U.S. 9, 11 (1991)("[L]ike other forms of official immunity, judicial immunity' is an immunity from suit, not just from ultimate assessment of damages."), citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Id., quoting Pierson v. Ray, 386 U.S. 547, 554 (1967)( "[I]mmunity applies even when the judge is accused of acting maliciously and corruptly.").

It cannot seriously be denied that Judge Ten Eyck's acts in conducting the Habeas Corpus Hearing, and issuing an Order which denied the Plaintiff's Petition, were judicial in nature. "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Edlund v. Montgomery, 355 F. Supp.2d 987, 990 (D. Minn. 2005), quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978).

While we understand the Plaintiff to broadly allege that Judge Ten Eyck somehow conspired with the other Defendants, such broad and nonspecific assertions

of collusion fail as a matter of law. See, Johnson v. Esry, 210 F.3d 379, 2000 WL 375269 at *1 (8th Cir., April 13, 2000)[Table disposition], citing Manis v. Sterling, 862 F.2d 679, 681 (8th Cir. 1988)("Allegations of conspiracy, however, must be pled with sufficient specificity and factual support to suggest a 'meeting of the minds.'"), quoting Smith v. Bacon, 699 F.2d 434, 436 (8th Cir. 1983). Here, the Plaintiff's conspiracy allegations fail to meet that test, as they are entirely devoid of both specificity, and factual support.

"Judicial immunity discourages inappropriate collateral attacks and 'protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants.'" Edlund v. Montgomery, supra at 990, quoting Forrester v. White 484 U.S. 219, 225 (1988). The circumstances presented here underscore the need for judicial immunity. Judge Ten Eyck did nothing more than conduct a Hearing, and issue an Order, which resulted in a negative result for the Plaintiff, as to which Judge Ten Eyck bears no legal liability. Therefore, we recommend that the Plaintiff's causes of action against Ten Eyck be dismissed, with prejudice, on the basis of absolute judicial immunity.

2. Claims Against Hermerding, and Cummins. Hermerding and Cummins maintain that the Plaintiff's claims against them have been dismissed, and

that they are no longer parties to this case. See, Carmona II, supra at 831 ("We affirm the dismissal of defendants City of Brainerd, Crow Wing County, Rod McCulley, Marshall Prescott, Denny Peterson, David Hermerding, and Jennifer Cummings, but we modify the dismissal to be without prejudice"), citing Rule 4(m), Federal Rules of Civil Procedure; see also Order, Docket No. 74, at 2 n. 1 (noting that Hermerding and Cummins were "no longer part of the case"). Both Hemerding, and Cummins, were served with the Second Amended Complaint on May 27, 2005, nearly nine (9) months after their dismissal was affirmed without prejudice. See, Docket No. 95.

Given the Court of Appeals' prior decision in this matter, we decline to dismiss the claims against Hermerding, and Cummins, as barred by res judicata, since the prior dismissal, as to Hermerding, and Cummins, was "without prejudice," and the Court of Appeals granted leave for the Plaintiff to serve other unserved Defendants. Cf., Milliman v. Lindemoen, 30 Fed.Appx. 669, 669-670 (8th Cir., March 11, 2002)(based on District Court's dismissal of prior lawsuit, between the same parties, without prejudice, Court could not "affirmatively conclude res judicata bars" renewed lawsuit between same parties), citing, and quoting, Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001), for the proposition that "'dismissal without prejudice' primarily means dismissal without barring plaintiff from returning to same

court with same claims"). While that service of process was substantially delayed, and while it may have been more appropriate to require the Plaintiff to file a new cause of action against Hermerding, Cummins, and the others who had been dismissed without prejudice, the practical realities are that the Plaintiff is pro se, Hermerding and Cummins were ultimately served, and by recognizing that service, we reach the merits without prejudice to the Defendants.

Assuming, therefore, that Hemerding and Cummins are proper parties to this case, we recommend that the claims against them be dismissed on other grounds. Generally, public defenders are imbued with qualified immunity in the context of Section 1983 claims. See, Keating v. Martin, 638 F.2d 1121, 1122 (8th Cir. 1980); see also, Hinshaw v. Smith, --- F.3d ---, 2006 WL 212372 at *4 (8th Cir., January 30, 2006) ("Qualified immunity protects public officials from personal liability under §1983 when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

However, the immunity of public defenders does not extend to causes of action which allege intentional violations of federally protected civil rights under Title 42 U.S.C. §1983. See, Tower v. Glover, 467 U.S. 914, 923 (1984). In order to state a

Federal civil rights claim against a public defender, a plaintiff must show that, under Section 1983, the defendant acted "under the color of state law." See, Chapman v. Musich, 726 F.2d 405, 407 (8th Cir. 1984), cert. denied, 469 U.S. 931 (1984). A public defender does not act under color of State law in the course of providing traditional functions, such as serving as counsel to a criminal defendant. See, Polk County v. Dodson, 454 U.S. 312, 318-325 (1981). Here, as was the case with Judge Ten Eyck, the conspiracy allegations, which are alleged against the public defenders -- Hermerding and Cummins -- are entirely devoid of specificity, or factual support, and therefore, they must fail as a matter of law. See, Johnson v. Esry, supra at *1; Manis v. Sterling, supra at 681. Therefore, we recommend that the claims against Hemerding and Cummings be dismissed.

3. Claims Against Ventura and Hatch.

a. Standard of Review. As established by the Rooker/ Feldman doctrine, Federal Courts do not have subject matter jurisdiction over challenges to State Court decisions in judicial proceedings. See, Rooker v. Fidelity Trust Co., supra at 416; District of Columbia Court of Appeals v. Feldman, supra at 476; see also, Exxon Mobil Corp. v. Saudi Basic Industries Corp., 125 S. Ct. 1517, 1521-24 (2005); Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000);

Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997). The Rooker/ Feldman doctrine provides that, except for Federal Habeas Corpus Petitions, "lower federal courts lack subject matter jurisdiction over challenges to state court judgments." Mosby v. Ligon, 418 F.3d 927, 931 (8th Cir. 2005).

With minor exceptions, which do not apply here, the Federal review of a State Court determination may only be obtained in the United States Supreme Court. District of Columbia Court of Appeals v. Feldman, supra at 476, citing Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296 (1970); Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995); see also, Title 28 U.S.C. §1257. The Supreme Court, in Feldman, formulated a general rule which distinguishes general constitutional challenges to State laws and regulations -- over which the Federal Courts have jurisdiction -- from requests for review of specific State Court decisions, over which they have no jurisdiction. As explained by the Court, when the Federal claims are "inextricably intertwined with" State Court "decisions, in judicial proceedings," they fall outside of the Federal Court's jurisdiction. District of Columbia Court of Appeals v. Feldman, supra at 486-87.

Under this test, a Federal Court lacks subject matter jurisdiction "if the relief requested in the federal action would effectively reverse the state court decision or

void its ruling." Charchenko v. City of Stillwater, supra at 983; see also, Bechtold v. City of Rosemount, supra at 1065. Stated otherwise, "[w]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987)(Marshall, J., concurring).

Within this Circuit, even when a litigant has not had a fair opportunity to litigate a claim in the prior State Court proceeding, the Rooker/Feldman jurisdictional bar still applies, so long as the merits of the Federal action are "inextricably inter-twined" with the State Court decision. See, In re Goetzman, 91 F.3d 1173, 1178 (8th Cir. 1996), cert. denied sub nom., Goetzman v. Agribank, FCB, 519 U.S. 1042 (1996); Postma v. First Federal Savings & Loan, 74 F.3d 160, 162 (8th Cir. 1996); but see, Centifanti v. Nix, 865 F.2d 1422, 1433 (3rd Cir. 1989)(failure to raise constitutional claims in State Supreme Court does not bar District Court from hearing those claims when plaintiff did not have "realistic opportunity to fully and fairly litigate" claims in state court); Raddatz v. Beaubien, 880 F. Supp. 500, 503 (E.D. Mich. 1995) ("[T]here is an exception to the Rooker/Feldman doctrine in cases where the state court judgment is alleged to have been procured through fraud, deception, accident, or mistake."). As

pertinent here, the Rooker/Feldman doctrine is applicable to Section 1983 claims, as well as to claims requesting injunctive or declarative relief. See, Keene Corp. v. Cass, 908 F.2d 293, 296 (8th Cir. 2000).

b. Legal Analysis. Here, the Plaintiff alleges that Ventura, and Hatch, "conspired to issue and did issue an illegal extradition warrant."[5] Second Amended Complaint, at Part 3, ¶19. In support of that assertion, the Plaintiff alleges that he "ha[d] wr[itten] Governor Jesse Ventura on several occasion, informing him of the illegalities of his arrest, and about him signing an extradition warrant." Id. at Part 2, ¶25. We note that the Plaintiff does not allege any specific dates, as to those letters,

[5]By our reading, the Court of Appeals implicitly affirmed the District Court's grant of Summary Judgment to Ross on, among other grounds, the Rooker/Feldman doctrine. While the Court reversed the dismissals of the other, unserved Defendants, there is no suggestion in the Court of Appeals opinion, that it was reversing Summary Judgment as to Ross. See, Carmona v. Ross, 376 F.3d 829, 831 (8th Cir. 2004)(affirming "the dismissal of defendants City of Brainerd, Crow Wing County, Rod McCulley, Marshall Prescott, Denny Peterson, David Hermerding, and Jennifer Cummins, but we modify the dismissal to be without prejudice;" and reversing "as to the claims against the defendants John Sausen, Judge David Ten Eyck, Tim Friis, Jesse Ventura, Mike Hatch, Harvey Doe, Don Inwards, and Pete Doe, and remand for the district court to allow Carmona time to serve those defendants."). The Summary Judgment in favor of Ross was left in tact. While the Defendants urge, and we agree, that the application of the Rooker/Feldman doctrine is the law of this case, we engage in the Rooker/Feldman analysis for the purposes of completeness, and as a precautionary, in the event that we somehow misread the Court of Appeals' prior ruling in this case.

that would disclose whether they were sent prior, or subsequent to, the Plaintiff's extradition. The Plaintiff also alleges that he contacted Hatch "about the abuse and illegalities of the other defendant's actions," and that Hatch "refused to protect the plaintiff's rights and charge the defendants as requested." Id. at ¶26.

Previously, in the Plaintiff's Habeas appeal in State v. Carmona, supra at *1, the Minnesota Court of Appeals found that the Minnesota District Court's denial of Habeas Corpus relief was supported by the Record. In so ruling, the Minnesota Court of Appeals noted that the applicable test, once a Rendition Warrant has been issued by a Governor, is guided by the four procedural factors prescribed by the United States Supreme Court in Michigan v. Doran, 439 U.S. 282, 289 (1978). See, State v. Carmona, supra at *1. In order to reach that test, however, the examining Court must first accept that an Extradition Order has been granted by a Governor. The Minnesota Court of Appeals recognized that "[a] grant of extradition from a state governor is 'prima facie evidence that the constitutional and statutory requirements have been met,' and leaves the district court to review only four procedural factors." Id., citing Michigan v. Doran.

As the Plaintiff challenges the legality of the Extradition Warrant that was issued by Ventura, we find that we are without subject matter jurisdiction to address that

claim. Since the Minnesota Court of Appeals ruled that the four procedural factors were satisfied by the extradition documents, any attack on the validity of Ventura's Rendition Warrant would have the effect of overturning the Minnesota Court of Appeals' ruling that the Habeas denial was proper. Such a reversal of a State Court adjudication is precisely what the Rooker/Feldman doctrine forbids us to do, and accordingly, the Plaintiff's claims against Ventura, and Hatch, with regard to the validity of the Extradition Warrant, must be dismissed.

Even if we were to reach the merits of the Plaintiff's claims, we would find that the Plaintiff has failed to state a claim on which relief could be granted, as to Hatch and Ventura. His general claims provide no specific, factual basis, for a conspiracy, and fail to allege an actual meeting of the minds. See, Johnson v. Esry, supra at *1; Manis v. Sterling, supra at 681. Furthermore, Ventura and Hatch would be entitled to absolute immunity in the course of carrying out their respective State functions as the Governor, in issuing a Warrant, and as the Attorney General, in choosing whether to prosecute certain defendants in relation to the circumstances surrounding the execution of that Warrant. See, White v. Armontrout, 29 F.3d 357, 360 (8th Cir. 1994)("The governor's role in evaluating extradition requests and issuing arrest warrants consequent to them is judicial in nature and is therefore entitled to absolute immunity

from suit."), citing Arebaugh v. Dalton, 600 F. Supp. 1345, 1350-51 (E.D.Va. 1985) and Smith v. Lamm, 629 F. Supp. 1184, 1185 (D. Colo. 1986); Steele v. City of Bemidji, Minn., 114 F. Supp.2d 838, 850 (D. Minn. 2000)("absolute immunity protects a prosecutor from damages based on his decision not to prosecute."), aff'd in part, rev'd in part on other grounds, 257 F.3d 902 (8th Cir. 2001), cert. denied, 535 U.S. 1056 (2002), quoting Mullen v. United States, 1991 WL 219414 at *2 (W.D. Mo., September 16, 1991); see also, Imbler v. Pachtman, 424 U.S. 409, 431 (1976)(noting that absolute immunity protects prosecutors from damages based on decisions not to prosecute). Accordingly, we recommend that the Motion to Dismiss of Hatch, and Ventura, be granted.

B. The County Defendants' Motion for Summary Judgment.

1. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, --- U.S. ---, 125 S.Ct. 1860 (2005). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn

from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003); United Fire & Casualty Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Planned Parenthood of Minnesota/ South Dakota v. Rounds, 372 F.3d 969, 972 (8th Cir. 2004); Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003). Moreover, the movant is

entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

2. Legal Analysis. In his Second Amended Complaint, the Plaintiff asserts several claims against the County Defendants. Specifically, he alleges that Sausen, who is a Crow Wing County Assistant District Attorney, conspired to deprive the Plaintiff of his constitutional right to a fair and impartial Trial, to access to the Courts, a public Hearing, and the right to Court-appointed counsel. Second Amended Complaint, at Part 3, ¶¶10, 14, 15, 16. He further alleges various torts against Sausen, including malicious prosecution, kidnaping, and false imprisonment. Id. at ¶10. In

addition, the Plaintiff alleges that Prescott and McCulley, who are deputies for Crow Wing County, deprived the Plaintiff of access to his legal materials, despite his repeated requests for them, while his Habeas Petition was pending. Id. at ¶9. The Plaintiff also contends that Inwards, and Pete Doe, who are Sheriff Deputies with Crow Wing County, failed to return his papers that included his legal research, and case materials, on the date of his extradition to Louisiana. Id. at ¶8.

Ross, who is the Crow Wing County Sheriff, is alleged to have "breached his duty," by "repeatedly refus[ing] to properly investigate the alleged arrest warrant f[ro]m [sic] the State of Louisiana, nor did he verify that the warrant actually was issue[d] by a court of law," and that he failed to correct the "illegal confinement" of the Plaintiff. Id. at ¶¶17-18. Further, the Plaintiff contends that Sausen, Ross, and Inwards, conspired to deprive him of access to the Courts by unlawfully extraditing him to Louisiana, while his appeal to the Minnesota Supreme Court was still pending, which deprived him of his various constitutional rights. Id. at ¶¶7, 15. Finally, the Plaintiff alleges that two unnamed Defendants, Harvey and Pete Doe, committed various torts and constitutional violations. Id. at ¶¶1-3, 8.

In the County Defendants' Memorandum in Support of Summary Judgment, they present various defenses to the Plaintiff's claims, and contend that the Plaintiff's

claims are procedurally barred under the Rooker/Feldman doctrine, and under the principles of collateral estoppel, res judicata, and the holding of Heck v. Humphrey, 512 U.S. 477 (1994). The County Defendants also assert that the Plaintiff has failed to state a claim for conspiracy, or for denied access to the Courts, and they urge that they are entitled to either qualified, or official immunity, for their actions. As pertinent, we address each of the County Defendant's arguments in turn. a .

Prosecutorial Immunity. Sausen is immune from suit for his actions which arose from his role as the prosecutor in the Plaintiff's extradition proceedings. See, Dababnah v. Keller-Burnside, 208 F.3d 467, 472 (4th Cir. 2000) ("[I]t is apparent that the proper discharge of the prosecutor's duties in the criminal justice system requires that he be accorded unhampered discretion in deciding when to seek the extradition of an individual."), quoting Cleary v. Andersen, 423 F. Supp. 745, 748 (D. Neb. 1976); Payne v. Kempthorne, 2005 WL 1206676 at *7-8 (D. Idaho, May 20, 2005); Cross v. Meisel, 720 F. Supp. 486, 489 (E.D.Pa. 1989).

Furthermore, under Minnesota law, prosecutors are absolutely immune from civil liability when acting within the scope of their duties in prosecuting criminal charges. See, Brown v. Dayton Hudson Corp., 314 N.W.2d 210, 214 (Minn. 1981). In Brown, the Minnesota Supreme Court adopted the United States Supreme Court's

reasoning in Imbler v. Pachtman, supra at 431, which held that, "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under §1983." "The purpose of extending absolute immunity to prosecutors is to prevent the possibility that the risk of having to defend a lawsuit would deter a prosecutor from the fearless and vigorous performance of the prosecutorial function." S.J.S. by L.S. v. Faribault County, 556 N.W.2d 563, 566 (Minn.App. 1996), rev. denied (Minn., January 21, 1997), citing Brown v. Dayton Hudson Corp., supra at 213, in turn citing, Imbler v. Pachtman, supra at 427.

Under the doctrine of prosecutorial immunity, "[e]ven the dishonest or malicious performance of the function is absolutely immune from civil rights claims." Erickson v. County of Clay, 451 N.W.2d 666, 670 (Minn.App. 1990); see also, Willis v. Tarasen, 2005 WL 1270729 *5 (D. Minn., May 6, 2005)("Whether the claim is based on state common law tort claims, such as malicious prosecution or defamation, or federal civil rights claims, a prosecutor is absolutely immune from civil liability."), citing Brown v. Dayton Hudson Corp., supra at 213. In determining whether immunity applies, the focus is on whether the alleged conduct is within the scope of the defendant's prosecutorial duties. Hyland v. State, 509 N.W.2d 561, 564 (Minn.App. 1993), rev. denied (Minn., February 24, 1994).

Here, the Plaintiff contends that Sausen maliciously and vindictively pursued the Plaintiff's extradition, when Sausen "knew and did know that plaintiff's arrest and imprisonment was unconstitutional and illegal." See, Second Amended Complain, at Part 3, ¶14. Given the foregoing principles of law, however, we conclude that Sausen is absolutely immune from liability. See, Dababnah v. Keller-Burnside, supra at 472 ("Moreover, seeking extradition is one of those prosecutorial functions to which the reasons for absolute immunity apply with full force."), citing Imbler v. Pachtman, supra at 430. As the Minnesota Supreme Court has observed, "[t]he discretionary decision whether to charge and whether to continue a prosecution lies at the very heart of the prosecutorial function." See, Brown v. Dayton Hudson Corp., supra at 214. Since Sausen is immune from prosecution as a matter of law, for pursuing the Plaintiff's extradition to Louisiana, and for prosecuting that result through the Plaintiff's State Habeas proceeding, we recommend that his Motion for Summary Judgment be granted.

b. Prescott and McCulley. As to Prescott and McCulley, the Plaintiff alleges that he was "repeatedly deprived [of] access to legal cases, books, and photo copies of his legal work." Second Amended Complaint, at Part 3, ¶9. He further contends that the denial was made with the approval of Ross. Id. Here, we

find guidance from the previous Report and Recommendation, see Docket No. 39, which had been adopted by the District Court, and which had addressed the Plaintiff's claim of denial of access to his legal materials, as to Ross.

At the outset, we recognize that, in Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court explicitly recognized that prisoners retain a constitutional right of meaningful access to the Courts. The relevant inquiry, in determining whether prison authorities have impinged upon that right, is "whether the prisoner has been given a 'reasonably adequate opportunity' to present his claim." Martin v. Tyson, 845 F.2d 1451, 1456 (7th Cir. 1988), citing Bounds v. Smith, supra at 825. As a person subject to extradition, the Plaintiff was entitled to meaningful access to the Courts. See, Eldridge v. Block, 832 F.2d 1132, 1138 (9th Cir. 1987).

However, in order to prevail on an access to the Courts claim, the Plaintiffs must demonstrate some "actual injury." Lewis v. Casey, 518 U.S. 343, 349 (1996); see also, Klinger v. Department of Corrections, 107 F.3d 609, 617 (8th Cir. 1997)("In Lewis v. Casey, the Supreme Court held, based on principles of standing, that actual injury must be proven in order to prevail on an access-to-courts claim"). There is no "abstract, freestanding right" of access to legal resources or legal papers; the Plaintiff must show that he has been deprived of some specific opportunity to defend himself,

or advance a viable legal claim, in some particular action. Lewis v. Casey, supra at 351; Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996). He must also identify some specific injury that arose from that lost opportunity. Id. As our Court of Appeals has observed:

> To state a claim that a law library or legal assistance program violates [the right of access], inmates must assert that they suffered an actual injury to pending or contemplated legal claims. [Lewis v.] Casey, 518 U.S. [343], 116 S.Ct. at 2180. Alleging theoretical inadequacies is insufficient. Id. Inmates must instead show, for example, that a complaint they prepared was dismissed due to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a claim for actionable harm at all. Id.

Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996).

Here, the Plaintiff appears to allege that the deprivation of access to the Louisiana legal materials, and sundry other legal documents, deprived him of his right of access to the Courts. Second Amended Complaint, at Part 3, ¶9. He further alleges that "their neglect and deliberate indifference to plaintiff's constitutional rights of adequate and effective, access to the courts; plaintiff suffered prolong [sic] incarceration and an illegal extradition," and that the denial violated his constitutional rights. Id. However, the Plaintiff does not identify any specific instance in which he had been deprived of

the opportunity to defend himself, or advance a viable legal claim, in some particular action. Namely, the Minnesota Court of Appeals did have the opportunity to address, and subsequently consider, his claims, and expressly noted:

> Appellant contends that he could not be in violation of his parole if not validly placed on parole. The district court ruled that this claim was not properly part of appellant's habeas challenge to extradition from Minnesota, concluding that a claim challenging Louisiana law would need to be raised in a Louisiana court upon his return to that jurisdiction. See, e.g., State v. Reinke, 398 N.W.2d 53, 54 (Minn. App. 1986)(holding that Minnesota was not the proper jurisdiction to inquire into guilt or innocence of the accused, something hat can only be determined within the demanding state). We agree.

State v. Carmona, supra at *1.

Accordingly, his access to the Courts claim fails, as a matter of law. See, Lewis v. Casey, supra at 351; see also, Cody v. Weber, 256 F.3d 764, 769-770 (8th Cir. 2001)(inmate was not deprived of access to courts by the confiscation of his personal computer, in the absence of an actual injury). Therefore, we recommend that Summary Judgment be granted to Prescott, McCullen, and Ross, as to the Plaintiff's denial of access to the Courts claims against them.

c. Confiscation of Plaintiff's Property on February 5, 2001.

The Plaintiff maintains that Inwards, and Pete Doe, were responsible for depriving him

of his property -- which, allegedly, included "legal papers; cases; journals of events and facts," trial transcripts and all hearing transcripts, of his extradition case in the State of Minnesota; original copies of law suits; law cases; legal work products and legal briefs; legal addresses and names," and various other materials, on the date of his extradition. See, Second Amended Complaint, at Part 2, ¶¶20-24; Part 3, ¶8. The Plaintiff contends that Inwards, and Pete Doe, have "repeatedly refused to return his legal property to him," and that "they confiscated said property without any search or seizure warrant, in violation of the Fourth and Fourteenth Amendments to the United States Constitution." Id. at Part 3, ¶8.

However, we note that the Plaintiff has a proper post-deprivation remedy for the return of his property -- namely an action for conversion. See, Fawcett v. Heimbach, 591 N.W.2d 516 (Minn. App. 1999)("Conversion is an act of willful interference with the personal property of another that is without justification or that is inconsistent with the rights of the person entitled to the use, possession, or ownership of the property."), citing Dain Bosworth, Inc. v. Goetze, 374 N.W.2d 467, 471 (Minn. App. 1985). Given the availability of a civil action for conversion, we recommend that the County Defendants' Motion for Summary Judgment as to the confiscation of the Plaintiff's property be granted. See, Hudson v. Palmer, 468 U.S. 517, 533 (1984)

("We hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available"); Id. at 533 (finding no Fourth Amendment violation for confiscation of materials from a prisoner's cell); Bausley v. Dugan, 110 Fed. Appx. 736 (8th Cir., October 13, 2004)(dismissing a Section 1983 claim, brought pursuant to the Fourth and Fourteenth Amendments, against jail personnel who had allegedly confiscated a prisoner's materials).

d. Ross' Duty to Investigate the Plaintiff's Extradition Warrant.

The Plaintiff claims that Ross failed in his duty to investigate the Warrant which ultimately led to the Plaintiff's extradition.[6] He also alleges that

[6]As we have previously noted, we construe the Court of Appeals' earlier decision in this matter as affirming the District Court's grant of Summary Judgment to Ross. Accordingly, the Plaintiff is barred from bringing the same claims against Ross, as to which Summary Judgment was affirmed, and he is also barred from bringing any other claims which could have been addressed in the prior ruling of the District Court, as affirmed on appeal. See, Daley v. Marriott Int'l, Inc., 415 F.3d 889, 895-96 (8th Cir. 2005)("Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action," see, Landscape Properties, Inc. v. Whisenhunt, 127 F.3d 678, 682 (8th Cir. 1997), and, under the same cause of action element, "whether a second lawsuit is precluded turns on whether its claims arose out of the 'same nucleus of

Ross was obligated to "correct this illegal confinement." See, Second Amended Complaint, at Part 3, ¶18. However, the claim is precluded by the Rooker/Feldman doctrine, as every Minnesota Court, which examined the Warrant and the subsequent extradition proceedings, found no legal wrong. Were we now to allow the Plaintiff's civil action against Ross, we would be effectively challenging the validity of a State Court Judgment, without the requisite jurisdiction to do so.

Moreover, even if Rooker/Feldman did not apply, we would find that Ross' actions were clothed with qualified immunity. "Under the doctrine of qualified immunity, state actors are protected from civil liability when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lawyer v. City of Council Bluffs, 361 F.3d 1099, 1102 (8th Cir. 2004), quoting Sexton v. Martin, 210 F.3d 905, 909 (8th Cir. 2000), quoting, in turn, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To survive summary judgment based on the affirmative defense of qualified immunity, a claimant must '(1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is

---

operative facts as the prior claim,'" citing Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998), quoting Untied States v. Gurley, 43 F.3d 1188, 1195 (8th Cir. 1994)). Nevertheless, in the interests of completeness, we address Ross' other claimed defenses.

clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right.'" Gatlin ex rel. Gatlin v. Green, 362 F.3d 1089, 1093 (8th Cir. 2004), quoting Omni Behavioral Health v. Miller, 285 F.3d 646, 651, quoting, in turn, Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996); see also, Lawyer v. Kernodle, 721 F.2d 632, 635 (8th Cir. 1983). For a right to be considered clearly established, the "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

In Lawyer v. Kernodle, supra, the plaintiff alleged that the defendant, who performed an autopsy on the plaintiff's wife, negligently diagnosed the cause of his wife's death. The plaintiff was eventually charged with second degree murder in his wife's death, but the charges were later dropped. Our Court of Appeals found that the coroner, in performing an autopsy, was exercising his professional judgment and discretion. See, Lawyer v. Kernodle, supra at 635. The Court then noted that "[i]t has generally been held that coroners enjoy a qualified immunity when performing their official functions for the state." Id. The Court further noted that "'[p]rosecutors and their assistants also enjoy immunity from Section 1983 actions so long as the actions

complained of appear to be within the scope of their prosecutorial duties,'" and that "'[t]his immunity is equally available to investigators for the state prosecutors for actions in connection with a criminal prosecution.'" Id., quoting Keating v. Martin, 638 F.2d 1121, 1122 (8th Cir. 1980).

The rationale of Lawyer v. Kernodle applies with equal force to the actions of Ross who, here, held the Plaintiff within his custody in his capacity as a Crow Wing County Sheriff. The Plaintiff does not set forth any evidence that Ross engaged in an activity that was not within his official capacity, although the Plaintiff did name him in both his official and personal capacity.

While the Plaintiff alleges various constitutional injuries, albeit in a conclusory fashion that is lacking a factual basis, the Plaintiff has failed to set forth any evidence which demonstrates that Ross knew that his alleged conduct -- holding the Plaintiff pursuant to the extradition Warrant -- would violate the Plaintiff's constitutional rights. Clearly, on the Record presented, Ross is entitled to qualified immunity, as to this Claim.

Moreover, if the Plaintiff is claiming that Ross should be liable for false imprisonment or kidnapping, we similarly find that the Ross is cloaked with official and vicarious official immunity as to those claims. In Minnesota, governmental

employees are entitled to immunity when they are performing discretionary functions. See, e.g, Kuha v. City of Minnetonka, 176 F. Supp.2d 926, 934 (D. Minn. 2001) (applying Minnesota law); Janklow v. Minnesota Board of Examiners, 552 N.W.2d 711, 715-16 (Minn. 1996). As government employees, they are "accorded near complete immunity for their actions in the course of their official duties, so long as they do not exceed the discretion granted them by law." Janklow v. Minnesota Board of Examiners, supra at 716. Such official immunity is "intended 'to protect public officials from the fear of personal liability that might deter independent action.'" Dokman v. County of Hennepin, 637 N.W.2d 286, 296 (Minn. App. 2001), rev. denied (Minn., February 28, 2002). Generally, police officers are discretionary officials. Id.

As a result, the heart of our analysis, under a claim of official immunity, is the nature of the governmental action; that is, was the act discretionary or ministerial. "[I]n analyzing any immunity question it is essential to identify the precise govern-mental conduct at issue." Watson v. Metropolitan Transit Commission, 553 N.W.2d 406, 415 (Minn. 1996). Discretionary decisions are those which involve the exercise of judgment or discretion. See, Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990); Mowatt v. Hennepin County, 2002 WL 857733 at *4 (Minn.App., May 7, 2002) (stating that discretionary acts are those that involve "the exercise of individual

judgment in carrying out official duties")[unpublished decision]. In contrast, ministerial decisions, which are the types of decisions that are absolute, certain, and imperative, and involve merely the execution of a specific duty which arises from fixed and designated facts, see Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991), are not immune to suit. "Some degree of judgment and discretion will not necessarily confer discretionary immunity on an official; the crucial focus is upon the nature of the act." Elwood v. County of Rice, 423 N.W.2d 671, 677 (Minn. 1988).

The categorization of an act as discretionary or ministerial is a legal question, which the Court determines. See, Kelly v. City of Minneapolis, 598 N.W.2d 657, 664 (Minn. 1999). "In making this determination the Court [should] keep[] in mind that official immunity, 'protects public officials from the fear of personal liability that might deter independent action and impair the effective performance of their duties.'" Kuha v. City of Minnetonka, supra at 934, quoting Elwood v. County of Rice, supra at 677. "Only when officials act outside the scope of their charged authority can they be deemed to have waived this immunity and be held personally liable for their negligence." Watson v. Metropolitan Transit Commission, supra at 415. The burden of proving immunity is on the defendant. Engele v. Indep. Sch. Dist. No. 91, 846 F.

Supp. 760, 768 (D. Minn. 1994); Rehn v. Fischley, 557 N.W.2d 328, 333 (Minn. 1997).

Here, Ross, as a County Sheriff, participated in an activity that was largely discretionary -- that is, whether to further examine the circumstances surrounding the State of Louisiana's issuance of the documents that requested the extradition of the Plaintiff while he was in Ross' custody. The Plaintiff does not cogently challenge the discretionary manner in which these activities were carried out, and therefore, the State tort claims, which allegedly arise from his detention, including those for false imprisonment, and kidnapping, are not legally viable actions against Ross.

Lastly, even if were to address the Plaintiff's claim on its merits, we would find that it to be entirely without merit. As the United States Supreme Court has reasoned:

> We do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

Baker v. McCollan, 443 U.S. 137, 145-46 (1979); see also Lane v. Sarpy County, 165 F.3d 623, 624 (8th Cir. 1999).

Here, Ross was under no obligation to investigate a Warrant that appeared, on its face, to be proper. The Plaintiff was afforded an opportunity to contest the validity of the Warrant before the Minnesota Courts, where it was determined that the extradition documents, pursuant to <u>Michigan v. Doran</u>, supra, were in order on their face. See, <u>State v. Carmona</u>, supra at *1; see also, <u>Minnesota Statutes Section 629.10</u> (providing Habeas proceedings for persons subject to extradition who challenge the legality of their arrest). Accordingly, we recommend that Summary Judgment be granted to Ross on the Plaintiff's claim that Ross failed in his duty to investigate the extradition documents.

e. <u>The Plaintiff's Extradition on February 5, 2001</u>. The Plaintiff alleges that Sausen, Ross, and Inwards, conspired to "unlawfully extradite the plaintiff to Louisiana on February 5, 2001," while "knowing that plaintiff ha[d] not exhausted all his judicial remedies." See, <u>Second Amended Complaint</u>, at Part 3, ¶¶7, 15. In support of that allegation, the Plaintiff has provided a copy of a letter, which is dated January 30, 2001, and which was purportedly sent by Sausen, to officials in the State of Louisiana, and which stated as follows:

> Please be advised that we have received the decision from the Court of Appeals affirming Judge Ten Eyck's decision that Carmona is to be extradited to the State of Louisiana

> pursuant to the Governor's Warrant. He has now exhausted all appeal options. Therefore, you are welcome to get Mr. Carmona and bring him back to Louisiana. I have contacted Don Inwards at the Crow Wing County Jail who is waiting for your call as to when you will be here.

See, Exhibits in Support of Memorandum in Opposition to Motion for Summary Judgment, Docket No. 38, Ex. C.

Both the Plaintiff, and the County Defendants, assert that the Plaintiff was released to the officials, from the State of Louisiana, on February 5, 2001. See, Second Amended Complaint, at Part 3, ¶¶7, 15; County Defendants' Memorandum in Support of Motion for Summary Judgment, at 3. Both parties also recognize that, on March 13, 2001 -- over one (1) month after the Plaintiff was extradicted, the Minnesota Supreme Court denied review of the Plaintiff's appeal. See, State v. Carmona, supra. It is also apparent that the Plaintiff's appeal to the Minnesota Supreme Court did not occur until, at the latest, March 5, 2001, which was after the Plaintiff's extradition. See, Letter, Exhibits in Support of Memorandum in Opposition to Motion for Summary Judgment, Docket No. 38, Ex. D.[7] The Plaintiff had also petitioned for a Federal Writ

[7]The letter to the Plaintiff, from his attorney, states that he did not "receive [the Plaintiff's] message that Crow Wing County authorities were going to release you to Louisiana authorities until you had already left the jail and were on your way back to Louisiana," and that the attorney had filed a Petition for further review with the Minnesota Supreme Court. See, Letter, Exhibits in Support of Memorandum in Opposition to Motion for Summary Judgment, Docket No. 38, Ex. D.

of Habeas Corpus, pursuant to Title 28 U.S.C. §2254, on June 13, 2000, but that Petition was dismissed without prejudice, on November 1, 2000, as the Plaintiff had failed to exhaust his State Court Habeas remedies. See, Report and Recommendation, Carmona v. Ross ("Carmona III"), Civ. No. 0:00-cv-1450 (MJD/ESS), Docket No.5 (D. Minn., June 26, 2000), adopted by Order, Docket No. 12 (D. Minn., November 1, 2000).[8]

The State of Minnesota has adopted the Uniform Criminal Extradition Act ("UCEA"), which prescribes the procedure for interstate extradition of prisoners. See, Minnesota Statutes Sections 629.01-629.29; see also, State v. Phillips, 587 N.W.2d 29, 33-35 (Minn. 1998)(summarizing Minnesota's extradition process). Under the applicable Minnesota statutes, if a person, who is to be extradited, challenges the validity of the extradition, the Governor of Minnesota must issue a Rendition Warrant, and the person challenging his or her extradition is then entitled to bring a Petition for

[8]Subsequently, the Plaintiff filed another Petition for a Writ of Habeas Corpus which sought his return to the District of Minnesota as, in the Plaintiff's view, he was illegally extradited to Louisiana. The District Court dismissed the Petition without prejudice on jurisdictional grounds, and that dismissal was affirmed on appeal. See, Carmona v. State of Minnesota, 23 Fed.Appx. 629 (8th Cir., January 16, 2002), cert. denied, 537 U.S. 1052 (2002).

a Writ of Habeas Corpus before the State Courts. See, State v. Phillips, supra at 33-34; Minnesota Statutes Sections 629.07-629.08; 629.10.

The State of Minnesota further provides an appellate process for judicial review of a State District Court's dismissal of a Habeas Corpus Petition. See, Minnesota Statutes Section 589.29 ("A party aggrieved by the final order in proceedings upon a writ of habeas corpus may appeal to the court of appeals as in other civil cases"); Rule 117, Minnesota Rules of Civil Appellate Procedure ("Any party seeking review of a decision of the Court of Appeals shall separately petition the Supreme Court * * * within 30 days of the filing of the Court of Appeals' decision."). Here, the Plaintiff was admittedly extradited prior to his opportunity to petition the Minnesota Supreme Court for appellate review of the State Court denial of his Petition for a Writ of Habeas Corpus. We are also mindful that the Plaintiff subsequently did petition the Minnesota Supreme Court, which ultimately denied review on March 13, 2001.

Our analysis begins by examining whether the Plaintiff has properly presented a claim, on these facts, under Section 1983. Here, we take guidance from our Court of Appeals, which has previously held that "section 1983 provides a remedy for improper extradition in violation of the extradition clause and statute." See, Brown v. Nutsch, 619 F.2d 758, 764 (8th Cir. 1980). In Brown, in which two cases were

consolidated for review, two prisoners challenged the dismissal of their Section 1983 claims, in which they alleged improper interstate extradition in violation of Article IV, Section 2 of the United Constitution, and Title 18 U.S.C. Section 3182. Id. at 760. In one of those cases, a prisoner was extradited, following a Preliminary Hearing, which addressed his arrest. Id. at 761. Our Court of Appeals noted that, "[w]hile the [prisoner] does have a right to a determination of the propriety of extradition, this determination is to be a judicial one, conducted on petition for the writ of habeas corpus in the asylum state according to the guidelines laid down by the Supreme Court in Michigan v. Doran." Id. at 764-65. The Court went on to explain as follows:

> Where the alleged fugitive has been subsequently constitutionally convicted in the demanding state, something more than mere noncompliance with the extradition statutes would have to be shown to provide a basis for compensatory damages, since if there is probable cause to arrest that person and try him on charges pending in the demanding state and he is subsequently convicted, there appears to be no basis for damages absent special circumstances or physical harm.

Id. at 764.

The Court went on to note, however, that any due process violations are actionable for nominal damages without proof of actual injury. Id. at 764 n. 9, citing Carey v. Piphus, 435 U.S. 247, 266 n. 24 (1978).

The Plaintiff contends that his extradition, before the exhaustion of his State and Federal Habeas appellate process, violated his due process and equal protection rights, his ability to access the Courts, as well as his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights, under the United States Constitution. See, Second Amended Complaint, at Part 3, ¶¶7, 15. The County Defendants have not fully addressed those claims, but appear to have adopted all of their previous arguments as to why those claims should be dismissed.[9] Generally, the County Defendants have asserted that the Plaintiff's claims are procedurally barred by: 1) the Rooker/Feldman doctrine; 2) collateral estoppel;[10] 3) res judicata;[11] and 4) Heck v. Humphrey, supra at

---

[9]We note that the County Defendants memorandum notes, in refuting the Plaintiff's claim, that the Plaintiff was "extradited after the denial of his writ of habeas corpus and the Minnesota Supreme Court denied review." See, Memorandum in Support of Motion for Summary Judgment, at 15. We find that factual recitation to be at direct odds with the statement of the facts that the County Defendants had previously adopted, id. at 3, and with the Record presented.

[10]Collateral estoppel applies to bar the relitigation of "an issue of fact or law, actually litigated and resolved by a valid final judgment, [which] binds the parties in a subsequent action, whether on the same or a different claim." Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir. 2003), citing Thomas v. General Motors Corp., 522 U.S. 222, 233 n. 5 (1998).

[11]"Under res judicata, a judgment on the merits in an earlier lawsuit bars a second suit involving the same parties based on the same cause of action." Professional Management Associates, Inc. v. KPMG LLP, 345 F.3d 1030, 1032 (8th Cir. 2003), citing Landscape Props., Inc. v. Whisenhunt, 127 F.3d 678, 682 (8th Cir.

477.[12] In addition, the County Defendants assert that Inwards, Ross, and Sausen, are entitled to absolute, and qualified immunity.

1. Collateral Estoppel, Res Judicata, and Rooker/ Feldman. The County Defendants first contend that the Plaintiff is attempting to relitigate, or collaterally attack, his arrest and extradition which acts were validated in his State Court Habeas proceeding. Based upon the State Habeas action, the Defendants contend that this action is barred by the Rooker/Feldman doctrine, by collateral estoppel, and by res judicata. However, we do not construe the Plaintiff's claim, insofar as it relates to his alleged premature extradition, as an attempt to relitigate, or challenge, the outcome of the State Court proceedings. The Plaintiff's claim, at least in regards to the timing of his extradition, does not contend that the State Court decision was incorrect, but rather, in that claim, the Plaintiff asserts that he was denied access to the Courts, and procedural due process, by his extradition to Louisiana prior to the resolution of the appellate process in the Minnesota Courts. See, Second Amended Complaint, at Part 3, ¶¶7, 15. As so construed, the Plaintiff's

1997).

[12]In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that a claim for damages, which arises out of a State Court conviction or sentence, that has not been invalidated, is not cognizable under Section 1983.

claimed injury -- namely, that he was extradited before the denial of review by the Minnesota Supreme Court -- was not before any Minnesota Court. Accordingly, because the legal and factual inquiries are different from those asserted in the State Court action, we find that the Plaintiff's claims, concerning the timing of his extradition, are not barred by the Rooker/Feldman doctrine, collateral estoppel, or res judicata.[13]

2. The Heck Doctrine. The County Defendants have also asserted that the Plaintiff's claims are barred under the Heck doctrine. In Heck, the United States Supreme Court held that, in order to recover damages for a purportedly unlawful conviction, or confinement under Section 1983, the Plaintiff must prove, as an element of his claim, that the conviction at issue was reversed on direct appeal, or was otherwise declared invalid. See, Heck v. Humphrey, supra at 486. There, the Supreme Court found that a Complaint, which asserted a Section 1983

[13]We expressly note that the Plaintiff's Petition for further review, before the Minnesota Supreme Court, is not before us. If that Petition either contained a claim that his extradition was premature, or could have contained such a claim, then the denial of his Petition could well constitute a bar to his relitigation of the same substantive claim in his Second Amended Complaint, under res judicata, collateral estoppel, or Rooker/Feldman. In the absence of that Petition, however, we simply are unable to make such a determination on this Record.

action that challenged an assertedly unlawful State conviction, must allege, and prove, a "termination of the prior criminal proceeding in favor of the accused," Heck v. Humphrey, supra at 486-87, by demonstrating, "that the conviction or sentence has been reversed by direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 487.

The holding, in Heck, extends not only to damage claims "for an allegedly unconstitutional conviction or imprisonment," but also to claims "for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." Id. As a consequence, "a claim for damages bearing that relationship to a conviction or sentence that has **not** been so invalidated is not cognizable under §1983." Id. [emphasis in original].

In the context of extradition, we acknowledge that the Courts of Appeals have failed to reach a consensus as to whether the holding, in Heck, precludes a finding of liability in a Section 1983 action for improperly following extradition procedures. In Knowlin v. Thompson, 207 F.3d 907 (7th Cir. 1999), the Court of Appeals for the Seventh Circuit determined that a State prisoner, who had filed a Section 1983 action against Arkansas law enforcement officers for allegedly violating the UCEA, by

extraditing him to Wisconsin before a Hearing could be held on his Habeas Petition, was barred from presenting any claims, pursuant to the Heck doctrine. Id. at 909. In that case, the Court noted that a Section 1983 claim, which is based upon a procedural deficiency in an extradition, was analogous to a claim for malicious prosecution. Id. Accordingly, the Court of Appeals for the Seventh Circuit observed:

> The tort of malicious prosecution provides the closest analogy in this case, and thus Knowlin cannot prevail in his claim based on the denial of an opportunity to test the facial validity of the extradition demand through habeas proceedings, absent a showing that he was not, in fact, extraditable through proper procedures.
>
> * * *
>
> [T]o establish a §1983 claim for monetary relief, including a showing of damages, Knowlin will have to prove that he suffered some deprivation of liberty greater than that which he would have suffered through extradition in full compliance with the UCEA. That showing, in turn, would necessarily imply the invalidity of his Wisconsin parole revocation, which Heck [v. Humphrey, supra] instructs cannot be shown through a §1983 suit. Heck therefore bars the instant suit.

Id.

Other Circuits have found that the holding, in Heck, does not act as a procedural bar, because a finding, that any violation of a prisoner's extradition rights from an asylum State, would have no effect upon the prisoner's sentence in the demanding State. See,

Young v. Nickols, 413 F.3d 416, 419 (4th Cir. 2005)(finding that Heck did not bar a Section 1983 action to assert damages from an illegal extradition), citing Wirth v. Surles, 562 F.2d 319, 323 (4th Cir. 1977); French v. Adams County Detention Center, 379 F.3d 1158, 1160 (10th Cir. 2004); Harden v. Pataki, 320 F.3d 1289, 1294-1302 (11th Cir. 2003)(same).

While we recognize that our Court of Appeals has not yet addressed the precise issue, we are persuaded that the Plaintiff's claims, which center upon his extradition prior to the conclusion of his State appeals process, is not barred under the Heck doctrine. In this respect, we find the reasoning, in Harden v. Pataki, supra at 1297, persuasive. There, a plaintiff filed a Section 1983 suit against various governmental entities, alleging that he had been extradited to another State without a signed Extradition Warrant, a waiver of his extradition rights, or a Habeas Hearing. Id. at 1292. In deciding that the holding, in Heck, did not act as a procedural bar, the Court of Appeals for the Eleventh Circuit explained:

> [E]xtradition procedures, even if they violate federal rights, have no bearing, direct or implied, on the underlying guilt or innocence of the person extradited. See In re Strauss, 197 U.S. 324, 333, 25 S.Ct. 535, 537, 49 L.Ed. 774 (1905) ([T]he process of extradition * * * is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question

> of guilt."). Neither do the extradition decisions of asylum states. See Michigan v. Doran, 439 U.S. 282, 290, 99 S.Ct. 530, 536, 58 L.Ed.2d 521 (1978)("[W]hen a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review the determination.").
>
> * * *
>
> [I]mproper extradition by the asylum state in violation of those rights cannot impugn the probable cause determination of the demanding state or the subsequent adjudication of guilt of the person extradited. Whether the person was convicted or sentenced after the extradition or, as here, before, is inconsequential.

Harden v. Pataki, supra at 1297.

As the extradition procedures, that Minnesota used in returning the Plaintiff to Louisiana, had no effect upon the length of the Plaintiff's sentence, nor upon the determination of his guilt or innocence, we agree with the majority of the Circuits to have addressed the matter, that Heck does not act as a procedural bar to the specific claims made by the Plaintiff.

Furthermore, a contrary conclusion would undermine our Court of Appeals' holding in Brown v. Nutsch, supra, which was issued prior to Heck, and which noted that, "[i]f the prisoner in the demanding state is not allowed to bring a Section 1983 civil suit, he will be effectively foreclosed from any method of enforcing the extradition

safeguards recognized by the availability of the writ of habeas corpus in the asylum state." Id. at 763. Therefore, we find that the claim, which arises from the Plaintiff's extradition on February 5, 2001, is not barred under the Heck doctrine.

3. The Merits of the Plaintiff's Claim. As previously noted, the Plaintiff was extradited before he had an opportunity to exhaust the full appellate process, by pursuing his Petition for a Writ of Habeas Corpus before the Minnesota Supreme Court. However, after his extradition from this State, the Minnesota Supreme Court denied further review, and that the Plaintiff appears, from his filing address, to remain incarcerated in the State of Louisiana.

Inwards, Ross, and Sausen, contend that they are entitled to qualified immunity but, as to Sausen -- who is a State prosecutor -- we find the claim barred on the basis of absolute prosecutorial immunity. Quite plainly, the letter that Sausen wrote, and that appears to be the predicate for the Plaintiff's claim against him, was Sausen's effort to alert the Louisiana officials that he had completed his work in prosecuting the Plaintiff's extradition. While Sausen clearly erred in that conclusion -- since the Plaintiff had not completed any potential appeal to the Minnesota Supreme Court -- a mere error in judgment does not eviscerate the protections of prosecutorial immunity, or the immunity would be only worthwhile if the decision of the prosecutor was a

correct one. Obviously, if prosecutorial immunity is only available to correct prosecutorial judgments, the immunity would have little practical benefit.

Of course, we do not overlook the Plaintiff's allegation that Sausen, Ross,[14] and Inwards, conspired to deprive him of his constitutional rights, the allegations of a conspiracy are too ephemeral, and factually nonspecific, to viably support such a cause of action. See, e.g., Cooper v. Delo, 997 F.2d 376, 377 (8th Cir. 1993) ("[Plaintiff's] conspiracy claim lacked an arguable basis in fact because he did not allege facts suggesting a mutual understanding or meeting of the minds."), citing Holbird v. Armstrong-Wright, 949 F.2d 1019, 1020 (8th Cir. 1991), and Smith v. Bacon, 699 F.2d 434, 436 (8th Cir. 1983).

In fact, the Plaintiff does not specify any actions that Ross undertook in the extradition, other than conclusory allegations that Ross had been complicit in a broader conspiracy. As to Inwards, the Plaintiff alleges, by way of Sausen's letter, that Inwards was informed that the Plaintiff could be extradited. Based upon that threadbare allegation, we find that the Plaintiff has not presented sufficient facts that Inwards conspired with anyone when he surrendered the Plaintiff to "the extradition

[14]Of course, if our reading of the Court of Appeals' prior opinion is a correct one, then a claim against Ross is precluded by res judicata.

agents [who were] here to get him." Second Amended Complaint, at Part 2, ¶20. Therefore, we recommend that Sausen, Inwards, and Ross, are entitled to Summary Judgment on the Plaintiff's claim of an unconstitutionally premature extradition to the State of Louisiana.[15]

4. Remedy. If we had found Sausen, Inwards, and Ross, liable for the Plaintiff's premature extradition, then we would, nonetheless, recommend that the Plaintiff's resulting damages claim be limited to a de minimis

[15]Moreover, any claim against Ross, and Inwards, would also be precluded by the doctrine of qualified immunity. In order to survive Summary Judgment based on the affirmative defense of qualified immunity, the plaintiff must "'(1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right.'" Gatlin ex rel. Gatlin v. Green, 362 F.3d 1089, 1093 (8th Cir. 2004), quoting Omni Behavioral Health v. Miller, 285 F.3d 646, 651, quoting, in turn, Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996). As to Sausen, if he were not insulated from liability on the basis of prosecutorial immunity, we seriously doubt that he would be entitled to qualified immunity for, as a Minnesota lawyer, we would expect County prosecutors to know that an appeal to the Minnesota Court of Appeals does not exhaust Minnesota State remedies. On the other hand, given Sausen's letter, we would have no basis to conclude that either Ross, or Inwards, acted unreasonably, since they would have had no reason to countermand Sausen's assessment that the Plaintiff had exhausted his State Court remedies. Accordingly, Ross, and Inwards, are entitled to qualified immunity, were we to reach that issue.

award of monetary relief.[16] The Plaintiff has not alleged what actual injury to him arose from the alleged procedural due process violation, and the Minnesota Supreme Court ultimately considered the matter, and rejected the Plaintiff's challenge to extradition, by denying further review. Given those circumstances, we are guided by the Court of Appeals for the Tenth Circuit's reasoning, in a similar case, in which a fugitive was denied due process before his extradition:

> Since plaintiff has not alleged that he could have prevented the extradition on one of the four grounds set forth in Michigan v. Doran, and since he could not, as a matter of law, have prevented the extradition by producing evidence that he was not guilty of the crimes charged, the extradition itself was justified, even though the procedures used to accomplish it were deficient. Under such circumstances, plaintiff cannot recover for any injury caused by the extradition; he can only recover for any injury, such as emotional distress, caused by the deprivation of due process itself. See, Carey v. Piphus, supra at 1052.
>
> The attorney's fees and other expenses plaintiff incurred in Oklahoma flowed from the extradition, not the deprivation of due process. Therefore, they are not recoverable. Likewise, any emotional distress plaintiff suffered as a result of having to defend against serious charges in Oklahoma or

---

[16]We address the issue of damages only in the interests of completeness for, if the District Court adopts our recommended dispositions of the Summary Judgment Motions, the Court need not reach the issue of damages, as no damages would be warranted where the County Defendants are successful on Summary Judgment.

> as a result of having his life allegedly put in jeopardy on the return trip to Wyoming also flowed from the extradition rather than the deprivation of due process itself. [footnote omitted] Since plaintiff did not allege, much less prove, that he suffered any injury as a result of the deprivation of due process alone, he was entitled to receive only nominal damages on his claim. See Zinermon v. Burch, 494 U.S. 113, 126 n.11(1990); Carey v. Piphus, 435 U.S. at 266-67, 98 S.Ct. at 1054.

Long v. Shillinger, 927 F.2d 525, 528 (10th Cir. 1991).

The Plaintiff has failed to show, and cannot show, that the alleged deprivation of due process would have prevented his eventual extradition to the State of Louisiana, and therefore, he is only entitled to nominal damages. See, Brown v. Nutsch, supra at 764 n. 9 ("Damages resulting from mental and emotional distress are recoverable to the extent actual injury was caused by the Section 1983 violation," and that "due process violations are actionable for nominal damages without proof of actual injury"), quoting Carey v. Piphus, supra at 256-57, 266 & n.24; see also, White v. Armontrout, supra at 361 (finding that, absent evidence that conduct was "motivated by evil motive or intent," failure to consider punitive damages was harmless, in a Section 1983 action in which the plaintiff was denied a hearing prior to extradition), citing Smith v. Wafe, 461 U.S. 30, 56 (1983). Accordingly, were we to reach the issue of damages, we would

recommend that the Plaintiff be awarded $1.00 in nominal damages, from Sausen, Ross, and Inward, on his claim of a premature extradition.

f. Unnamed Defendants Harvey, and Pete Doe. The Plaintiff's Second Amended Complaint alleges claims against Harvey Doe, in his official and individual capacities, and against Pete Doe, whose capacity has not been pled. See, Second Amended Complaint, at Part 1, ¶¶8, 10. Harvey Doe is alleged to be "an unidentified arresting officer for Crow Wing County, of the State of Minnesota," while Pete Doe is alleged to be employed as a Deputy Sheriff with the Crow Wing Sheriff's Department. Id. Despite the fact that this case was filed in November of 2000 -- over five (5) years ago -- and that the Plaintiff filed his Second Amended Complaint in May of 2002, the Plaintiff has yet to identify, let alone make an effort to amend his Complaint, or substitute named Defendants in place of Harvey, and Pete Doe.

Moreover, in his initial Complaint, which was filed on November 3, 2000, the Plaintiff named Dick Ross, and "John Does (Deputies) [whose names] will be supplied after Discover[y]." See, Complaint, Docket No. 1, at Part 3. The original Pretrial Order set the deadline for discovery at March 22, 2002. The Plaintiff added named Defendants in both his First Amended Complaint, which was filed on January 8, 2001, and his Second Amended Complaint, which was filed on May 6, 2002. See, Docket

Nos. 9, 40. Given that the County Defendants allege that they have responded to the Plaintiff's discovery requests on December 19, 2001, February 15, 2002, and March 19, 2002, see County Defendants' Memorandum in Support of Summary Judgment, Docket No. 86, at 11 n. 2, the Plaintiff has had ample time in which to ascertain the identities of Pete, and Harvey Doe, if he wanted to pursue his action against them. Furthermore, the Plaintiff does not object to the dismissal of Pete, and Harvey Doe, as reflected in his response to the Summary Judgment Motions. See, Plaintiff's Opposition to the Defendants' Motion for Summary Judgment, Docket No. 103.

Other Courts in this District have likewise recognized that, under the same circumstances, the dismissal of the Doe defendants is appropriate. See, Hasher v. City of Rochester, 2005 WL 1925856 at *2 (D. Minn., August 11, 2005)(slip opinion)("Because discovery is complete and the deadline for amendments has passed, and because Plaintiff fails to identify the unnamed officers and object to Defendants' Motion to dismiss these unnamed Defendants, Defendants' Motion on this point is granted"), citing Thorton v. United States Department of Justice, 93 F. Supp. 2d 1057 (D. Minn. 2000); see also, Madison v. City of Minneapolis, 2004 WL 1630953 *3 n. 3 (D. Minn., July 15, 2004). Accordingly, we recommend that Harvey and Pete Doe be dismissed from this case.

NOW, THEREFORE, It is --

RECOMMENDED:

1. The Motion to Dismiss [Docket No. 79] by the State Defendants be granted.

2. The Motion for Summary Judgment [Docket No. 85] by the County Defendants be granted.

Dated: February 21, 2006 s/Raymond L. Erickson

Raymond L. Erickson
CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 10, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 10, 2006,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.