UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Jesus Carmona,

    Plaintiff,

  vs.         REPORT AND RECOMMENDATION

John Sausen, David Ten Eyck,
David Hermerding, Jennifer
Cummings, Tim Friis, Jesse
Ventura, Mike Hatch, Don
Inwards, Marshall Prescott,
Rod McCulley, Dick Ross,
Harvey (Doe), and Pete (Doe),

    Defendants.   Civ. No. 00-2447 (MJD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant Tim Friis ("Friis") for Summary Judgment.[1]  The Plaintiff appears <u>pro se</u>, and Friis appears by Jon K.

---

[1]The other Defendants in this matter have previously moved for either Dismissal or for Summary Judgment.  On February 21, 2006, we recommended that those Motions be granted.  See, <u>Report and Recommendation</u>, <u>Docket No. 130</u>.

Iverson, Esq.   For reasons which follow, we recommend that Friis' Motion for Summary Judgment be granted.

## II. Factual and Procedural History

On April 24, 1984, a Jury in Louisiana found the Plaintiff guilty on two (2) Counts of armed robbery.  See, Affidavit of Kafi E. Cohn ("Cohn Aff."), Docket No. 36, Ex. A., at 1.  The Plaintiff was sentenced to twenty-five (25) years in prison, but was released, on parole, on June 14, 1996.  Id., Ex. B.  As a condition of his release, the Plaintiff was required to remain within the boundaries of Jefferson District, in the State of Louisiana, until July 10, 2008, or until other action by the Louisiana State Board of Parole.  Id., Ex. C, at 2.  On January 5, 2000, the State of Louisiana Department of Public Safety, and Corrections Board of Parole, issued a Warrant for the Plaintiff's Arrest, which arose from charges that he had violated the conditions of his parole by leaving the State of Louisiana.  Id., Ex. B.

According to the Plaintiff, on May 21, 2000,  Friis, who the Plaintiff alleges is a police officer with the City of Deerwood, Minnesota, and Harvey Doe, who the Plaintiff alleges is an unidentified police officer for Crow Wing County, arrested the Plaintiff in Brainerd, Minnesota, and delivered him to the custody of Dick Ross ("Ross"), who is the Crow Wing County Sheriff, at the Crow Wing County Jail.  See,

<u>Second Amended Complaint</u>, at Part 1, ¶10; Part 2, ¶¶1-2.  The Plaintiff alleges that the arrest was conducted at gunpoint, in front of the Plaintiff's fiancé and neighbors, without probable cause or a lawfully issued Arrest Warrant, and that he informed both Friis, and Harvey Doe, that he had not committed any crimes in either the States of Minnesota, or Louisiana.  See, <u>Id.</u> at Part 3, ¶¶1-3.

Friis, in his Affidavit, avers that he was, on May 21, 2000, employed as a police officer by the City of Brainerd Police Department, and that he has never been employed by the City of Deerwood.  <u>Affidavit of Tim Friis ("Friis Aff."), Docket No. 123</u>, at ¶¶1-3.  Friis further states that he has never had any contact with the Plaintiff, that he has not spoken with the Plaintiff's fiancé, pointed a gun at the Plaintiff, or been in the Plaintiff's home, and that he has never arrested, handcuffed, or transported the Plaintiff, to the custody of Ross, at the Crow Wing County Jail.  <u>Id.</u> at ¶¶4-8.  Friis avers that his only involvement in the arrest, and extradition of the Plaintiff, was Friis' review and signing of the Complaint against the Plaintiff.  <u>Id.</u> at ¶¶10-13.  Friis also states that, in an arrest, the arresting officer will normally draft the Complaint, and that another officer will review and sign it.  <u>Id.</u> at ¶9.

On May 23, 2000, the Plaintiff appeared in Criminal Court, and was denied bail.  <u>Second Amended Complaint</u>, at Part 2, ¶4.  On May 26, 2000, the Plaintiff filed an

Amended Writ of Habeas Corpus to the State Court.  Id. at ¶5.  On July 21, 2000, Jesse Ventura ("Ventura"), who was the Governor of Minnesota at that time, issued a Rendition Warrant which directed that the Plaintiff be extradited to the State of Louisiana.  Cohn Aff., Ex. E.  The Plaintiff alleges that the Rendition Warrant was not issued prior to "August of 2000," and that the "extradition warrant was pre-dated for July 21, 2000" because, "on July 24, 2000, John Sausen, stated for the record, that they was [sic] still waiting on an extradition warrant to be signed."  Second Amended Complaint, at Part 2, ¶11.

On August 14, 2000, the Plaintiff appeared, pro se, in State District Court before the Defendant Ten Eyck, who is a State District Judge ("Judge Ten Eyck"). Id. at ¶15-16.  The Plaintiff alleges that, "[Judge] Ten Eyck, John Sausen and David Hemerding, conspired to deprive the plaintiff of legal representation, by ordering that all legal representation be removed from representing the plaintiff, and forcing the plaintiff at the same time to forego a Writ of Habeas Corpus Hearing and Extradition hearing by himself against the defendants."  Id. at ¶15.

On August 15, 2000, Judge Ten Eyck denied the Plaintiff's Writ of Habeas Corpus, and ordered that the Plaintiff be delivered to the custody of the State of Louisiana.  Id. at ¶16; Carmona v. Ross ("Carmona I"), Case No. K7-00-1232 (Minn.

Dist. Ct., August 15, 2000), <u>Cohn Aff.</u>, Ex. J.  In so ruling, Judge Ten Eyck noted, in

part, as follows:

> The crux of Mr. Carmona's argument is that he was sentenced without the benefit of parole or early release and that therefore, it is impossible for him to be on parole and impossible for him to have violated conditions of parole. However because such a legal argument is based <u>entirely</u> on Louisiana state law, it would be wholly inappropriate for this Court to give it substantial consideration.  This Court's analysis is limited to a procedural examination of the extradition documents. [citation omitted].  It is sufficient for extradition if the demanding authority provides proper extradition documents and warrants, which, on their face, allege that the petitioner has "broken the terms of * * * parole."  State ex. rel.  Kirkendoll v. Zacharias, 410 N.W.2d 56 (Minn. App. 1987).  The State of Louisiana has supplied this Court with documents that are sufficient on their face and which allege a conviction of [the Plaintiff], his subsequent release, and a violation of his release conditions.  This same analysis applies to [the Plaintiff]'s conflicting claims that he was improperly convicted and that his conviction was subsequently overturned.  He provided no evidence that supported such claims and furthermore, the extradition papers from Louisiana reflecting his conviction, sentencing, and condition of his release are in order on their face.

<u>Carmona I</u>, supra at 2-3.

Judge Ten Eyck's ruling was affirmed by the Minnesota Court of Appeals, and the

Minnesota Supreme Court subsequently denied review.  See, <u>State v. Carmona</u>, 2001

WL 69505 (Minn. App., January 30, 2001), rev. denied (Minn., March 13, 2001).  The

Plaintiff was extradited to Louisiana on February 5, 2001, prior to the issuance of the Minnesota Supreme Court's denial of review.  <u>Second Amended Complaint</u>, at Part 2, ¶20-21.

The Plaintiff then commenced this action, under Title 42 U.S.C. §1983,  alleging that Ross, and his deputies, who are identified as the John Doe Defendants, denied him access to the Courts, while he was being detained in the Crow Wing County Jail. Shortly thereafter, the Plaintiff amended his Complaint to assert claims against David Hermerding ("Hermerding"), and Jennifer Cummings ("Cummings"), who are alleged to be Crow Wing County Public Defenders, Rod McCulley, Denny Peterson,[2] and Marshall Prescott, who are alleged to have been employed at the Crow Wing County Jail, Crow Wing County, and the City of Brainerd, Minnesota.  See, <u>Docket No. 9</u>.

Thereafter, the Plaintiff amended his Complaint a second time, in order to assert claims against John Sausen ("Sausen"), who is alleged to be the Assistant District Attorney for Crow Wing County; Judge Ten Eyck, who is alleged to be a State Court Judge; Friis, who is alleged to be a Police Officer for the City of Deerwood, Minnesota; Ventura, who was the Governor of Minnesota at the time; Mike Hatch,

_____

[2]Denny Peterson was not named as a Defendant in the Plaintiff's Second Amended Complaint, and is not presently a party to this action.

who is the Attorney General for the State of Minnesota; Don Inwards, who is alleged to be a Crow Wing County Sheriff's Deputy; Harvey Doe, who is the unidentified police officer who effected the Plaintiff's arrest; and Pete Doe.  See, <u>Docket No. 40</u>.

The Second Amended Complaint includes claims asserted against Friis under Title 42 U.S.C. §§1983, 1985, 1986, 1987, and 1988, for alleged violations of the Plaintiff's rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as a number of torts, including aggravated kidnapping, false arrest, false imprisonment, and conspiracy to deprive the Plaintiff of his civil rights, in executing the Arrest Warrant, and in delivering the Plaintiff to the Crow Wing County Jail.  See, <u>Second Amended Complaint,</u> <u>Docket No. 40</u>, at p. 1; Part 3, ¶¶1-3, at pp. 14-16.

The Plaintiff claims that all of the named Defendants conspired "to carry out their scheme to falsely arrest; kidnap; falsely imprisoned [sic]; illegally extradite and deprive the plaintiff of his legal papers, affects, etc., in violation of the plaintiff's constitutional civil rights of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution."  <u>Id.</u> at Part 3, ¶20.

By Order dated August 14, 2003, the District Court dismissed the Plaintiff's Complaint.  While the Court ruled on the substantive allegations against Ross, the

other Defendants were dismissed from the suit as a result of the Plaintiff's failure to effect service of process.   On appeal, the Order of the District Court was affirmed in part, and reversed in part, in that the Court of Appeals held that the Plaintiff should have been afforded an additional one hundred and twenty (120) days in which to effect service on those Defendants who were named, for the first time, in the Second Amended Complaint.   See, <u>Carmona v. Ross</u> ("<u>Carmona II</u>"), 376 F.3d 829, 830 (8th Cir. 2004). The Court affirmed the dismissal of the remaining Defendants, but without prejudice.[3]   <u>Id.</u> at 831.   The Plaintiff has since effected service on each of the remaining Defendants, with the exception of the Doe Defendants.  See, <u>Docket No. 95</u>.

---

[3]Several of the Defendants, who were dismissed from the suit without prejudice, have since been served with process, have answered the Plaintiff's Complaint, and have filed dispositive Motions which, as noted, have been addressed in a previous Report and Recommendation.

### III.  <u>Discussion</u>

A.    <u>Standard of Review</u>.    Summary Judgment is not an acceptable means
of resolving triable issues, nor is it a disfavored procedural shortcut when there are no
issues which require the unique proficiencies of a Jury in weighing the evidence, and
in rendering credibility determinations.  See, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,
327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711
(8th Cir. 2004), cert. denied, --- U.S. ---, 125 S.Ct. 1860 (2005).  Summary Judgment
is appropriate when we have viewed the facts, and the inferences drawn from those
facts, in a light most favorable to the nonmoving party, and we have found no triable
issue.  See,  <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir.
2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003); <u>United Fire &
Casualty Co. v. Garvey</u>, 328 F.3d 411, 413 (8th Cir. 2003).  For these purposes, a
disputed fact is "material" if it must inevitably be resolved and the resolution will
determine the outcome of the case, while a dispute is "genuine" if the evidence is such
that a reasonable Jury could return a verdict for the nonmoving party.  See, <u>Anderson
v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/
South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 2004); <u>Fenney v. Dakota,
Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir.

2005); <u>Davis v. U.S. Bancorp</u>, 383 F.3d 761, 768 (8th Cir. 2004); <u>Bell Lumber and Pole Co. v. United States Fire Ins. Co.</u>, 60 F.3d 437, 441 (8th Cir. 1995).

      B.    <u>Legal Analysis</u>.    In Friis' Memorandum in Support of Summary Judgment, he advances various defenses to the Plaintiff's claims, and contends that the Plaintiff has failed to state a claim for conspiracy, and Friis urges that he is entitled to either qualified, or official immunity, for his alleged actions. He further argues that the Plaintiff's claims are procedurally barred under the <u>Rooker/ Feldman</u> doctrine, and under the principles of collateral estoppel, res judicata, and the holding of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). Furthermore, Friis argues that many of the claims, which the Plaintiff has alleged against him, have no basis in fact. Specifically, the Plaintiff alleges that Friis unlawfully arrested, imprisoned, and kidnapped him. See, <u>Second Amended Complaint</u>, Part 3, at ¶¶1-3. However, Friis avers that he has never personally interacted with the Plaintiff, and that his only connection to the Plaintiff is the signing of the Complaint which was written by another officer. See, <u>Friis Aff</u>., at ¶¶4, 7, 8, 12, and 13. Notably, the Plaintiff does not dispute, in his responsive filing, that Friis' actions were limited to the signing of the Criminal Complaint. See, <u>Plaintiff's Traverse to Tim Friis' Answers</u>, <u>Docket No. 128</u>, at 3. Therefore, our

-11-

analysis is focused solely upon Friis' act in signing the Criminal Complaint, and any

consequences flowing directly from that act.[4]

      1.   <u>Qualified Immunity</u>.  "Under the doctrine of qualified immunity,

state actors are protected from civil liability when 'their conduct does not violate

---

    [4]We also note in passing that the Plaintiff's claims, under certain of the Federal Statutes he cited in his Second Amended Complaint, fail to present a claim upon which relief can be granted as to Friis.  For example, the Plaintiff makes no mention of any racial or class-based, invidiously discriminatory animus, or any factual basis that would support such an allegation, in his Second Amended Complaint, and therefore, any claims arising under Title 42 Section 1985, as a consequence must fail. See, <u>Carpenter Outdoor Advertising Co. v. City of Fenton</u>, 251 F.3d 686, 690 (8th Cir. 2001), citing <u>Bell v. Fowler</u>, 99 F.3d 262, 270 (8th Cir. 1996).  Furthermore, since a Section 1986 claim cannot be advanced in the absence of a Section 1985 claim, the Plaintiff's Section 1986 claim must also be dismissed. See, <u>Gatlin ex rel. Estate of Gatlin v. Green</u>, 362 F.3d 1089, 1095 (8th Cir. 2004), citing <u>Jensen v. Henderson</u>, 315 F.3d 854, 863 (8th Cir. 2002).

    As further examples, we also note that the Plaintiff has not alleged a basis for relief under Section 1987, and we recognize that Section 1987 does not allow a private cause of action. See, <u>Cartano v. Santa Clara County</u>, 2002 WL 1677723 *5 (N.D. Cal., July 19, 2002); <u>Beacham v. Annerino</u>, 1993 WL 266540 *3 (N.D. Ill., July 15, 1993); see also, <u>Inmates of Attica Correctional Facility v. Rockefeller</u>, 477 F.3d 375, 380-82 (2nd Cir 1973)(discussing Section 1987).  Similarly, Section 1988 does not provide an independent Federal cause of action either, but is, instead, recognized as a procedural rule.  See, <u>Moor v. County of Alameda</u>, 411 U.S. 693, 702-03, 704 n.13 (1973); <u>Sarmiento v. Texas Board of Veterinary Medical Examiners</u>, 939 F.2d 1242, 1245 n.4 (5th Cir. 1991); <u>Schroder v. Volcker</u>, 864 F.2d 97, 99 (10th Cir. 1988); <u>McLaughlin v. City of LaGrange</u>, 662 F.2d 1385, 1388 n.1 (11th Cir. 1981), cert. denied, 456 U.S. 979 (1982); <u>Stagemeyer v. County of Dawson</u>, 205 F. Supp. 2d 1107, 1115 (D. Neb. 2002).  Accordingly, these claims are all meritless.

clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lawyer v. City of Council Bluffs, 361 F.3d 1099, 1102 (8th Cir. 2004), quoting Sexton v. Martin, 210 F.3d 905, 909 (8th Cir. 2000), quoting, in turn, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "To survive summary judgment based on the affirmative defense of qualified immunity, a claimant must '(1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right.'" Gatlin ex rel. Gatlin v. Green, 362 F.3d 1089, 1093 (8th Cir. 2004), quoting Omni Behavioral Health v. Miller, 285 F.3d 646, 651, quoting, in turn, Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996); see also, Lawyer v. Kernodle, 721 F.2d 632, 635 (8th Cir. 1983).  For a right to be considered clearly established, the "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

In Lawyer v. Kernodle, supra, the plaintiff alleged that the defendant, who performed an autopsy on the plaintiff's wife, negligently diagnosed the cause of his wife's death.  The plaintiff was eventually charged with second degree murder in his

wife's death, but the charges were later dropped.  Our Court of Appeals found that

the coroner, in performing an autopsy, was exercising his professional judgment and

discretion.  See, <u>Lawyer v. Kernodle</u>, supra at 635.  The Court then noted that "[i]t

has generally been held that coroners enjoy a qualified immunity when performing their

official functions for the state."  <u>Id.</u>  The Court further noted that "'[p]rosecutors and

their assistants also enjoy immunity from Section 1983 actions so long as the actions

complained of appear to be within the scope of their prosecutorial duties,'" and that

"'[t]his immunity is equally available to investigators for the state prosecutors for

actions in connection with a criminal prosecution.'"  <u>Id.</u>, quoting <u>Keating v. Martin</u>,

638 F.2d 1121, 1122 (8th Cir. 1980).

   The rationale of <u>Lawyer v. Kernodle</u> applies with equal force to the actions of

Friis who, here, signed a Criminal Complaint against the Plaintiff in Friis' capacity as

a police officer for the City of Brainerd. The Plaintiff does not set forth any evidence

that Friis engaged in an activity that was not within his official capacity, although the

Plaintiff did name him in both his official and personal capacities.

   While the Plaintiff alleges various constitutional injuries, albeit in a conclusory

fashion that is lacking a factual basis, the Plaintiff has failed to set forth any evidence

which demonstrates that Friis knew that his alleged conduct -- the signing of the

Criminal Complaint -- would violate the Plaintiff's constitutional rights.   Our analysis

is further guided by <u>Ripson v. Alles</u>, 21 F.3d 805, 808-809 (8th Cir. 1994).   There, a

police chief, whose sole involvement with a plaintiff, in a Section 1983 action, was that

of signing and notarizing a Criminal Complaint charging that plaintiff.   Our Court of

Appeals ruled as follows:

> We conclude that [the signing officer] was entitled to
> summary judgment. [The signing officer] was not personally
> or directly involved in the alleged constitutional violation
> against [the plaintiff]: he did not investigate the claims of
> [the plaintiff's estranged wife] and he was not present at the
> arrest. [The signing officer] attested that he told [the
> investigating officer] to use his judgment regarding the arrest
> and was not aware that [the investigating officer] had
> arrested [the plaintiff] until after [he] was in custody. [The
> plaintiff] offers nothing to dispute these facts. [The signing
> officer's] act of signing and notarizing the complaint after
> the arrest was insufficient to establish a connection between
> [the signing officer] and the alleged deprivation of [the
> plaintiff's] constitutional rights.

<u>Id.</u>, citing <u>Vukadinovich v. Zentz</u>, 995 F.2d 750, 756 (7th Cir. 1993)("Merely signing
the police report absent actual knowledge of what took place is insufficient to establish
a connection between [the signing officer] and the alleged deprivation of [the
plaintiff's] constitutional rights.").

As Friis' sole interaction with the Plaintiff was in connection with his signing and

notarizing of a Criminal Complaint, we find that such an allegation of wrongdoing is

insufficient to support a constitutional violation arising from any allegedly unlawful

arrest, and that, accordingly, Friis' is entitled to qualified immunity for his signing of the Complaint.

Of course, we do not overlook the Plaintiff's allegation that Friis conspired with others to deprive him of his constitutional rights.   However, the allegations of a conspiracy are too ephemeral, and factually nonspecific, to viably support such a cause of action.   See, e.g., Cooper v. Delo, 997 F.2d 376, 377 (8th Cir. 1993) ("[Plaintiff's] conspiracy claim lacked an arguable basis in fact because he did not allege facts suggesting a mutual understanding or meeting of the minds."), citing Holbird v. Armstrong-Wright, 949 F.2d 1019, 1020 (8th Cir. 1991), and Smith v. Bacon, 699 F.2d 434, 436 (8th Cir. 1983).   Therefore, we also recommend Summary Judgment as to the Plaintiff's claim that Friis conspired to deprive the Plaintiff of his right by signing the Complaint.

2.   Official Immunity.  As noted, the Plaintiff has also alleged a number of State law claims against Friis.  In Minnesota, governmental employees are entitled to immunity, from State law claims, when they are performing discretionary functions. See, e.g, Kuha v. City of Minnetonka, 176 F. Supp.2d 926, 934 (D. Minn. 2001)(applying Minnesota law); Janklow v. Minnesota Board of Examiners, 552 N.W.2d 711, 715-16 (Minn. 1996).  As government employees, they are "accorded

-16-

near complete immunity for their actions in the course of their official duties, so long as they do not exceed the discretion granted them by law." Janklow v. Minnesota Board of Examiners, supra at 716. Such official immunity is "intended 'to protect public officials from the fear of personal liability that might deter independent action.'" Dokman v. County of Hennepin, 637 N.W.2d 286, 296 (Minn. App. 2001), rev. denied (Minn., February 28, 2002). Generally, police officers are discretionary officials. Id.

As a result, the heart of our analysis, under a claim of official immunity, is the nature of the governmental action; that is, was the act discretionary or ministerial. "[I]n analyzing any immunity question it is essential to identify the precise govern-mental conduct at issue." Watson v. Metropolitan Transit Commission, 553 N.W.2d 406, 415 (Minn. 1996). Discretionary decisions are those which involve the exercise of judgment or discretion. See, Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990); Mowatt v. Hennepin County, 2002 WL 857733 at *4 (Minn.App., May 7, 2002) (stating that discretionary acts are those that involve "the exercise of individual judgment in carrying out official duties")[unpublished decision]. In contrast, ministerial decisions, which are the types of decisions that are absolute, certain, and imperative, and involve merely the execution of a specific duty which arises from fixed and designated facts, see Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991), are not

immune to suit.  "Some degree of judgment and discretion will not necessarily confer discretionary immunity on an official; the crucial focus is upon the nature of the act." Elwood v. County of Rice, 423 N.W.2d 671, 677 (Minn. 1988).

The categorization of an act as discretionary or ministerial is a legal question, which the Court determines.  See, Kelly v. City of Minneapolis, 598 N.W.2d 657, 664 (Minn. 1999).  "In making this determination the Court [should] keep[] in mind that official immunity, 'protects public officials from the fear of personal liability that might deter independent action and impair the effective performance of their duties.'"  Kuha v. City of Minnetonka, supra at 934, quoting Elwood v. County of Rice, supra at 677. "Only when officials act outside the scope of their charged authority can they be deemed to have waived this immunity and be held personally liable for their negligence."  Watson v. Metropolitan Transit Commission, supra at 415.  The burden of proving immunity is on the defendant.  Engele v. Indep. Sch. Dist. No. 91, 846 F. Supp. 760, 768 (D. Minn. 1994);  Rehn v. Fischley, 557 N.W.2d 328, 333 (Minn. 1997).

Here, Friis, as a police officer with the City of Brainerd, participated in an activity that was largely discretionary -- that is, whether to sign a Complaint which alleged probable cause to believe that the Plaintiff committed a given offense.   See,

-18-

Mahamoud v. Schrum, 2002 WL 31248023 at *5 (D. Minn., October 4, 2002)("[T]o the extent that Plaintiff's claims are predicated on [the signing officer's] signature on the official Complaint, that act, too, is discretionary").  Moreover, we specifically find that there is no evidence in this Record that Friis carried out his discretionary duty in a willful or malicious way so as to place his action, in signing the Criminal Complaint, outside the protection of official immunity.  The Plaintiff does not cogently challenge the discretionary manner in which this activity was carried out, and therefore, the State tort claims, which allegedly arise from his detention, including those for false imprisonment, and kidnapping, are not legally viable actions against Friis.  See, Id. ("That probable cause determination is the province of the officer, and it is a discretionary function entitled to official immunity.").  Accordingly, Friis is entitled to official immunity for his act of signing the criminal Complaint.[5]

NOW, THEREFORE, It is --

RECOMMENDED:

_____

[5]Given that we recommend that Friis be granted both qualified, as well as official immunity, for his act of signing the Criminal Complaint against the Plaintiff, we decline to address the other bases that Friis has presented as warranting Summary Judgment in his favor -- namely, that the Plaintiff's claims are procedurally barred under the Rooker/Feldman doctrine, and under the principles of collateral estoppel, res judicata, and the holding of Heck v. Humphrey, supra.

The Motion for Summary Judgment [Docket No. 121] by the Defendant Tim Friis be granted.


Dated:  March 16, 2006                    s/Raymond L. Erickson

                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE


**NOTICE**


Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 31, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than March 31, 2006,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.